543 So.2d 84 (1989)
Barbara Brock, Wife of/and James BROCK
v.
Dr. John NEWMAN, et al.
Barbara Brock, Wife of/and James BROCK
v.
Dr. Henry DUHE, et al.
Nos. CA 88 0144, CA 88 0145.
Court of Appeal of Louisiana, First Circuit.
April 11, 1989.
As Amended April 28, 1989.
Rehearing Denied June 2, 1989.
Marie O. Riccio Wisner, New Orleans, for Barbara Brock & James Brock.
William S. Penick, New Orleans, for Charles C. Crumpler, M.D. & St. Paul Fire and Marine Ins. Co., Ins. Co., Insurer for Dr. Henry Duhe (deceased).
Edward J. Rice, Jr., Adams & Reese, New Orleans, for Dr. John Newman.
Fredrick R. Bott, New Orleans, for Dr. Paul Gard.
Before COVINGTON, C.J., and LOTTINGER and FOIL, JJ.
LOTTINGER, Judge.
This appeal arises from a medical malpractice suit brought pursuant to La.R.S. 9:2794 that was dismissed against two of four physicians on a joint motion for summary judgment. Suit was brought against Drs. Henry Duhe, Paul D. Gard, Charles Crumpler, and John Newman. Gard and Crumpler filed the joint motion. Plaintiffs, Barbara Brock and her husband, James Brock, appeal the judgment as to Dr. Gard.

FACTS
In August of 1982, Dr. Newman performed a "pap smear" on Mrs. Brock. In January of 1983, Mrs. Brock was told the results of the initial smear were "not clear." In February of 1983, Mrs. Brock underwent another pap smear. The smear was analyzed by Dr. Gard, a pathologist, who issued a report indicating "squamous displasia" (an abnormality of the cell). He suggested a histologic evaluation of the cervix. On or about February 21, 1983, Mrs. Brock was admitted to Bogalusa Community Medical Center for a dilation and curettage (D & C) and cold knife conization.
On or about February 21, 1983, Dr. Gard, after having prepared 22 slides from the block samples taken by Dr. Newman during the D & C procedure, issued a report *85 diagnosing Mrs. Brock's condition as being adenocarcinoma of the endometrium and intraepithelial squamous cell carcinoma of the cervix. Finding such an occurrence of cell carcinoma to be rare, Dr. Gard consulted another pathologist, Dr. Crumpler, who, in a report, dated February 25, 1983, offered a different diagnosis, i.e. a micro-invasion of squamous cell carcinoma (cancer also) of the endometrium. In the report, Dr. Crumpler noted hysterectomy as "accepted treatment for microinvasive squamous cell carcinoma and Grade I adenocarcinoma of the endometrium if one felt so inclined to so classify the endometrium."
Because Dr. Crumpler's report differed from his own, Dr. Gard sought the opinion of a third pathologist, Dr. Richard J. Reed. On March 10, 1983, Dr. Reed reviewed the slides and issued a third written opinion, stating he found no evidence of cancer of either the endometrium or the cervix.
Dr. Newman received Dr. Gard's report on or about February 22, 1983, and thereupon informed Mrs. Brock that she had cancer of both the endometrium and the cervix, and that he had made an appointment for her with a radiotherapist, Dr. Henry Duhe, also a named defendant and now deceased. She was to receive a month of radiation therapy beginning February 28, 1983, the date she was discharged from the hospital where the D & C was performed.
On or about February 25, however, Dr. Newman allegedly received Dr. Crumpler's report, which varied from Dr. Gard's report. Dr. Gard testified at his deposition he did not tell Dr. Newman he had consulted Dr. Reed despite a statement in his report that "consultation is sought." However, he also claimed he did not know that Dr. Newman had referred Mrs. Brock to Dr. Duhe. He stated he learned of this fact on March 18, when Dr. Newman visited Dr. Gard. Dr. Newman, however, contends he personally discussed the Crumpler report with Gard after receiving it and told him he had recommended Mrs. Brock begin radiation.
Dr. Newman received Dr. Reed's report on or about March 10. The radiation treatments were stopped on or about March 21, at which time Mrs. Brock had already received 15 treatments, rendering her sterile and in need of a hysterectomy.

TRIAL COURT
Plaintiffs' suits against Drs. Newman, and Gard, Crumpler, and Duhe (now deceased) and his insurer, The St. Paul, were consolidated into one suit, alleging they did not use the degree of knowledge or skill possessed, or the degree of care ordinarily exercised by physicians practicing medicine within their respective medical specialties. The entire lawsuit was stayed while the claim against Dr. Newman went before the medical review panel, which found he did not breach the standard of care of family practitioners in the treatment of Mrs. Brock.
Dr. Gard filed a motion for summary judgment which was denied. However, when a joint motion for summary judgment was filed by Drs. Crumpler and Gard, it was granted. Attached to the motion for summary judgment were reports, deposition excerpts, answers to interrogatories, and affidavits from Drs. Reed and G.W. Willis. The affidavit from Dr. Reed stated he had examined the slides and read the differing reports of Drs. Gard and Crumpler, and after having also reviewed Dr. Gard's deposition and the medical records of Mrs. Brock, he concluded the divergent diagnoses were "wholly within the bounds of proper medicine." He added, "Dr. Gard was not only not negligent, but he exhibited exemplary practice in conferring with Dr. Crumpler," and later seeking a third opinion about the "atypical specimen and slides." Dr. Willis stated in his affidavit that after having reviewed the differing reports and 14 of the 22 slides seen by Drs. Gard and Crumpler, the diagnoses of Drs. Gard and Crumpler "were within the sphere of reasonable possible diagnoses," and that their procedures "were customary and within the bounds of pathological standards of care."
Dr. Reed was the only witness listed by plaintiffs in response to Dr. Gard's interrogatories who would testify as to Dr. *86 Gard's negligence. Dr. Ed Lazarus was listed as a witness whom plaintiffs intended to call as to Drs. Duhe's and Newman's negligence. Also attached to the joint motion was a report requested by Dr. Newman from Dr. Herbert Ichinose, a pathologist, who viewed the biopsy and stated that while the endometrial biopsy did not show cancerous changes, the "pseudodecidual stromal nodules closely simulate cancer and adequately account for the difference in opinions."
Plaintiffs, in their opposition to the motion, dwelled on the "misdiagnoses" by Drs. Gard and Crumpler and remarks by Dr. Newman in his deposition that he "had no idea Dr. Crumpler and Gard could be totally out of sync with what Dr. Reed had to say." They also included a deposition excerpt by Dr. Gard conceding that "grading" a cancer would be significant to the attending physician and patient, but that some pathologists consider it more of an academic exercise. Plaintiffs contended Dr. Gard was negligent by not "grading" the stage of the cancer.
The trial court also granted a motion by The St. Paul to strike plaintiffs' fourth amending petition, alleging Drs. Duhe and Newman failed to disclose to Mrs. Brock information necessary for her to decide whether to undergo the radiation treatments.

ASSIGNMENT OF ERROR
Plaintiffs appeal the judgment as to Dr. Gard, contending the trial court erred in granting a motion for summary judgment.

I
La.Code Civ.P. art. 966 provides that a motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 967 provides the following with regard to the use of affidavits and counter affidavits:
Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein ... The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or by further affidavits. When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him.
In the case sub judice, the determining issue is whether it is proper to allow summary judgment based on the "opinions" of two physicians in affidavits attesting that the defendants/appellees' actions were within the standard of care, when one of the experts was also one of the plaintiffs' own witnesses, and when plaintiffs failed to contradict defendants' affidavits with any opposing affidavits.
Defendant/appellee, Dr. Gard cites Fortenberry v. Berthier, 503 So.2d 596 (La.App. 4th Cir.1987), for the proposition that affidavits are an appropriate vehicle for expressing opinion. Plaintiffs counter with McCoy v. Physicians & Surgeons Hospital, Inc., 452 So.2d 308 (La.App. 2d Cir.), writ denied, 457 So.2d 1194 (La.1984).
In Fortenberry, the court granted the summary judgment based primarily on documents submitted by one physician/defendant, stating that defendants' experts, who were also plaintiff's experts, had found no negligence on his part. Accordingly, the court concluded that "plaintiff's (sic) could produce no expert testimony to support the malpractice suit in accordance with R.S. 9:2794." Fortenberry v. Berthier, at 598.
Conversely, the court in McCoy held that affidavits cannot be used to express "opinions." In that case, plaintiff contended her injury was caused by both the surgery and injection. The neurologist was of the *87 "opinion" the injury was caused by the injection. The court's rationale was that La.Code Civ.P. art. 967 requires affidavits be based on "personal knowledge." The neurologist relied in part on the history given to him by plaintiff and others in forming his "opinion." The court went on to say:
A statement of opinion is not sufficiently certain or probative to justify a conclusion that there is no issue of fact which should be determined by a trial on the merits. Expert opinion statements or testimony requires evaluation by the trier of fact as to probative value. A motion for summary judgment is not the proper vehicle for the trier of fact to evaluate evidence and determine the facts which are disputed.

McCoy v. Physicians & Surgeons Hospital, Inc., at 310.
We believe that the approach followed in McCoy is the better of the two. La.Code Civ.P. art. 967 specifically states that affidavits must be based on "personal knowledge." An opinion as to whether a doctor breached the standard of care is not the type of "personal knowledge" contemplated by the codal article. It amounts to more of a conclusion that, while admissible at trial for the trier of fact to evaluate along with all the other evidence, should not be in an affidavit. This court, in Big S Trucking Co., Inc. v. Gervais Favrot, Inc., 450 So.2d 369 (La.App. 1st Cir.1983), rejected the use of affidavits setting forth conclusions of law. Furthermore, in Wiley v. Karam, 421 So.2d 294, 296 (La.App. 1st Cir.1982), we reiterated the jurisprudential rule that "[i]n determining whether or not a physician or dentist failed to exercise reasonable care and diligence, the views and opinions of expert witnesses who are members of his profession and who are qualified to testify on the subject are very persuasive, although not controlling."
The failure of plaintiffs to file any counter affidavits is not dispositive. In Pace v. Zilka, 484 So.2d 771, 773 (La.App. 1st Cir.), writ denied, 488 So.2d 691 (La.1986), this court stated such a contention is "unfounded. The court must first decide whether the party moving for summary judgment has supporting evidence sufficient to resolve all genuine issues of material fact." (Emphasis added). In Jewell v. Thompson, 386 So.2d 689, 692 (La.App. 3d Cir.), writ denied, 393 So.2d 746 (La.1980), it was likewise said that such failure did not automatically entitle the mover to summary judgment. The court opined:
Affidavits and other documents are not substitutes for findings of fact by a court.... Summary judgment is not to be used as a substitute for the trial of a controverted fact which bears directly on the decision of a case ... Summary judgments are not favored and any doubt will be resolved against the granting thereof, even where it may be favored by a preponderance of evidence.
Thus, for the above-cited reasons, we hold the trial court erred in granting defendant's joint motion for summary judgment. The decision of the trial court is reversed and remanded for further proceedings. Costs are assessed against appellee, Dr. Gard.
REVERSED AND REMANDED.