560 So.2d 625 (1990)
Carla G. Obiago, wife of/and Nnamdi A. OBIAGO, etc.
v.
MERRILL-NATIONAL LABORATORY, INC.
No. 89-CA-0931.
Court of Appeal of Louisiana, Fourth Circuit.
April 12, 1990.
Writ Denied June 29, 1990.
*626 Trevor G. Bryan, Jefferson, Bryan, Jupiter, Lewis & Blanson, New Orleans, for Carla G. Obiago, wife of/and Nnamdi A. Obiago, Individually and as Tutor of their minor child, Nnamdi A. Obiago, II.
Charles F. Gay, Jr., Lyn A. Batastini, Adams and Reese, New Orleans, and George E. Berry, Robert M. Dato, Pamela J. Yates, Dickson, Carlson & Campillo, Santa Monica, Cal., for Merrell Dow Pharmaceuticals, Inc.
Before BARRY and WARD, JJ., and HUFFT, J. Pro Tem.
WARD, Judge.
This is an appeal from an order granting summary judgment in favor of Merrell Dow Pharmaceuticals, Inc. in a suit brought by Carla and Nnamdi Obiago, individually and as tutor of their minor child, Nnamdi Obiago, II.
On March 12, 1984, the Obiagos sued Merrell Dow, claiming that Merrell Dow manufactured a prescription drug known as Bendectin which presented an unreasonable risk of causing birth defects in infants whose mothers had ingested the drug to control nausea in early pregnancy. The Obiagos' son was born on October 31, 1982 with deformities of the fingers of his right hand and the toes of his feet.
Merrell Dow's motion for summary judgment was based on its claim that Bendectin does not cause birth defects as a matter of law and that, even if Bendectin did cause birth defects, it could not have done so in this case because before Ms. Obiago ingested Bendectin the fingers and toes had developed with the deformities. Merrell Dow supported its motion with affidavits from area physicians and deposition testimony of treating physicians.
In one affidavit, Dr. Louise McFarland, a doctor of Public Health in Epidemiology affiliated with Tulane University Medical Center, stated that after reviewing scientific literature, she concluded that Bendectin does not cause birth defects. In another affidavit Dr. M.L. Pernoll, who specializes in obstetrics and gynecology with a subspecialty in maternal-fetal medicine, stated that he has prescribed Bendectin, has reviewed data available, and believes that Bendectin is a safe drug which does not cause birth defects. In a third affidavit Dr. Lee Roy Morgan, a specialist in oncology who has a doctorate and is board certified in clinical pharmacology, stated that after reviewing studies on Bendectin as well as reports from the Food and Drug Administration he found no evidence that Bendectin is harmful to a fetus. He concluded that the drug is safe and does not cause birth defects.
In addition to the three affidavits, Merrell Dow submitted portions of the depositions of Dr. Webster and Dr. Scherz, two physicians who had attended Mrs. Obiago. Dr. Herman Webster, Jr., a board certified obstetrician/gynecologist, delivered the Obiagos' son, Nnamdi. Dr. Webster stated that he has prescribed Bendectin for approximately 25 years to about 10% of his patients. He said that from his personal experience he has never associated birth defects, which occur in approximately 3% of all babies, with Bendectin. Furthermore, after reviewing scientific literature on Bendectin, Dr. Webster has concluded that Bendectin does not cause birth defects.
After her son was born, Mrs. Obiago consulted Dr. Robert Scherz, a board certified pediatrician who specializes in birth defects and genetics. At his deposition, Dr. Scherz stated that his review of literature about Bendectin has led him to conclude that Bendectin does not cause birth *627 defects. Moreover, Dr. Scherz concluded that even if Bendectin could cause birth defects, it could not have caused the defects found in this case because, according to information given to him by Mrs. Obiago, she had taken Bendectin after the deformed limbs in her child had already developed.
The Obiagos' only opposition to Merrell Dow's motion was that Merrell Dow's evidence was insufficient; they did not submit counter affidavits of experts; and the only document they did submit suggested Bendectin does not cause birth defects.
The Obiagos claim that the evidence submitted by Merrell Dow merely contains conclusory opinions of experts, is not based on personal knowledge, and, as such, does not comply with La.C.C.P. art. 967. They also argue that although parties opposing summary judgment must ordinarily respond by affidavit or otherwise, La.C.C.P. art. 967, since Merrell Dow's supporting documents were inadequate, the Obiagos were not required to produce counter affidavits to oppose the motion.
Art. 967. Same; affidavits
Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or by further affidavits.
When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him.
If it appears from the affidavits of a party opposing the motion that for reasons stated he cannot present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.
. . . . .
In support of their argument, the Obiagos cite several cases from other circuit courts in this state. In McCoy v. Physicians & Surgeons Hospital, Inc., 452 So.2d 308 (La.App. 2nd Cir.1984), writ denied 457 So.2d 1194 (La.1984), the Court held that affidavits or depositions which give expert opinions do not meet the requirement of personal knowledge. The affidavits and depositions submitted in McCoy contained opinions based on facts assumed to exist and those opinions tended to show that the defendant doctor's surgery was not a cause of plaintiff's injury. The Court found, that the affidavits failed to resolve an issue of material fact as to whether the doctor's alleged negligence was a cause of plaintiff's injury. In Brock v. Newman, 543 So.2d 84 (La.App. 1st Cir.1989) the Court followed McCoy, but the question in Brock was whether a medical doctor had breached the standard of care owed to a patient, not causation, and the Court held expert opinions which assumed the existence of facts similar to the case to be decided could not support a motion for summary judgment on the issue of whether a physician's conduct met the standard of care.
The case before us differs from McCoy and Brock. An expert opinion as to whether a doctor's alleged act of negligence caused that particular injury or whether the doctor's medical conduct in a particular case breached the standard of care owed to a patient is materially different from an expert's opinion, derived from scientific/medical data, as to whether under any circumstances a product may cause the birth defects. This type of "opinion" is more a statement of fact based on personal knowledge acquired through research and experience. It is not an expert opinion based on hypothetical or assumed facts.
*628 There is no firm line between opinion and fact. What is fact to one is merely opinion to another. Nonetheless, at some point what was formerly merely an opinion acquires such acceptance by the scientific community, and even layman, that it can be considered as fact by men and women of ordinary intelligence. For example, today we accept as fact what yesterday was only opinionthe existence of atoms, DNA, and other now unquestioned truths.
Moreover, in this case not only are the expert decisions based on special training, knowledge, and scientific studies, they are based on the personal observations and experiences of experts, Dr. Webster and Dr. Scherz. Both physicians observed Ms. Obiago and her son after delivery. Each could testify as factual witnesses and as experts, and their affidavits and deposition are more akin to statements of fact than opinions of experts.
Furthermore, this circuit has allowed affidavits from medical experts to support motions for summary judgment. Fortenberry v. Berthier, 503 So.2d 596 (La.App. 4th Cir.1987), and Strickland v. Bd. of Sup'rs of La. St. Univ., 432 So.2d 964 (La.App. 4th Cir.1983). Vanderdoes v. Ochsner Clinic, 377 So.2d 1368 (La.App. 4th Cir.1979), cert. denied 449 U.S. 880, 101 S.Ct. 228, 66 L.Ed.2d 103 (1980). In Vanderdoes, for example, one of the affidavits supporting defendants' motion for summary judgment in a medical malpractice case, which apparently the Court found was based on personal knowledge, was furnished by a doctor who claimed to have knowledge of the blood-drawing methods of the hospital and who stated that plaintiff could not have contracted hepatitis from the blood testing procedure. 377 So.2d at 1370. Similarly, in the present case, after familiarizing themselves with the scientific data on Bendectin, we believe experts could state as a matter of scientifically accepted fact that Bendectin does not cause birth defects, and the statements would be based on personal knowledge.
United States Courts in recent years have utilized summary judgment based on affidavits of medical experts to dismiss many suits in which it was alleged that there was a causal connection between Bendectin and birth defects. See, for example, Lynch v. Merrell-National Laboratories, 830 F.2d 1190 (1st Cir.1987); Hull v. Merrell Dow Pharmaceuticals, Inc., 700 F.Supp. 28 (S.D.Fla.1988). Other United States Courts after trial have held that Bendectin does not cause birth defects. Richardson v. Richardson-Merrell, Inc., 857 F.2d 823 (D.C.Cir.1988); Brock v. Merrell Dow Pharmaceuticals, Inc., 874 F.2d 307 (5th Cir.), modified on denial of rehearing 884 F.2d 166 (5th Cir.1989).
Although we believe that the Trial Court correctly granted the motion for summary judgment based on the depositions and affidavits, summary judgment would also be appropriate because one of the supporting documents showed Mrs. Obiago had ingested Bendectin too late in her pregnancy to attribute Bendectin to her son's birth defects. Dr. Scherz reached this conclusion based on Mrs. Obiago's statement to him that she thought she took Bendectin in about the eighth week of her pregnancy. Dr. Scherz found her statement significant because the "rays" for the particular deformed limbs would have developed by the end of the fifth week of pregnancy and Bendectin administered in the eighth week could not have caused the deformity.
We affirm. All costs of this appeal are assessed to Appellants.
AFFIRMED.
PRESTON H. HUFFT, J. Pro Tem., concurs with reasons.
HUFFT, Judge Pro Tem., concurring.
While I do not believe affidavits setting forth the opinions of experts relative to the issues to be decided in a case fall within the ambit of Art. 967 of the Code of Civil Procedure, which requires that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein", I am bound by decisions of *629 this circuit, which have affirmed the granting of summary judgment when the affidavits of experts filed in support of the motion go unchallenged by affidavits of other experts expressing a contrary opinion. Accordingly, I concur.