690 So.2d 922 (1997)
Wilma W. POWERS and Tom Powers, Plaintiffs-Appellants,
v.
Betty TUCKER, dba Tower of Beauty, et al., Defendants-Appellees.
No. 29190-CA.
Court of Appeal of Louisiana, Second Circuit.
February 26, 1997.
M. Randall Donald, Monroe, for Plaintiffs-Appellants.
Hayes, Harkey, Smith & Cascio by Thomas M. Hayes, III, Elizabeth D. Bogan, Monroe, for Defendants-Appellees Betty Tucker d.b.a. Tower of Beauty, Shirley Turner and Ohio Casualty Ins. Co.
Davenport, Files & Kelly by Mike C. Sanders, Carey B. Underwood, Monroe, for Defendants-Appellees Cosmair, Inc. d.b.a. L'Oréal and Zurich American Ins. Co.
Before GASKINS, CARAWAY and PEATROSS, JJ.
GASKINS, Judge.
The plaintiffs, Wilma W. Powers and Tom Powers, appeal the granting of summary judgment in favor of the defendants, Betty Tucker d.b.a. Tower of Beauty, Shirley Turner, Ohio Casualty Insurance Company, Cosmair, Inc. d.b.a. L'Oréal, and Zurich American Insurance Company. For the following reasons, we reverse and remand.

FACTS
On August 31, 1990, Mrs. Powers had her hair washed, styled, and colored at the Tower of Beauty salon in Monroe. Shirley Turner, a Tower of Beauty employee, prepared and applied the color treatment to Mrs. Powers' hair. The next day Mrs. Powers accompanied her husband on a business trip to New Hampshire. On September 3, Mrs. Powers became ill, and on September 4, she went to the emergency room of Portsmouth Regional Hospital in Portsmouth, New Hampshire, complaining of fever, chills, and swelling in the head and neck area. On September 5, Mrs. Powers returned to the hospital in Portsmouth with these same symptoms, and this time she was admitted. She was treated in Portsmouth until September 14, when she was released and returned to her home in West Monroe.
*923 Upon her return home, Mrs. Powers developed large lesions to her scalp which had to be surgically drained and debrided. She experienced hair loss and required skin grafts and skin stretchers placed in her head to restore her normal appearance and hair growth.
On August 29, 1991, Mr. and Mrs. Powers filed their initial petition for damages alleging that Mrs. Powers' illness was caused by adulterants and bacteria contained in the hair color treatment she received at Tower of Beauty. After a lengthy delay by the plaintiffs in ascertaining and serving the proper defendants, the matter finally proceeded to pretrial posture.
On June 22, 1995, defendants Ms. Tucker d.b.a. Tower of Beauty, Ms. Turner, and Ohio Casualty filed a motion for summary judgment. (The other defendants subsequently adopted the motion.) The motion for summary judgment was based upon six exhibits, most notably an affidavit by Dr. Anthony LaRocco, Jr., who professed to be a specialist in the diagnosis and treatment of infectious diseases and to have reviewed Mrs. Powers' medical records.
Dr. LaRocco, who did not examine Mrs. Powers, stated in part:
2.
At the outset of her illness, none of Mrs. Powers' examining physicians at Portsmouth General Hospital detected any erythema or redness of her facial skin or scalp before or during her hospitalization. Mrs. Powers testified that when she was in New Hampshire, she had no lesions on her scalp and that when she first became ill, there was no visible sore or wound or skin cracking. The lesions first appeared after she returned to Monroe and began to see Dr. Hebert, a period of more than 30 days following hair treatment and onset of her illness.
3.
In order for a relationship to have existed between Mrs. Powers' illness and the hair coloring treatment performed by the defendant in this action, plaintiff must have shown signs of rash, lacerations or lesions or some other objective sign of illness to her scalp at the inception of her illness. The absence of any such signs at that time excludes the hair coloring treatment from any possibility as a cause of her illness.
4.
Mrs. Powers' medical data suggests that it is likely that she suffered from streptococcal pharyngitis, which is a systemic disease and which was unrelated to the hair coloring treatment.
Exhibit B attached to the motion for summary judgment was a copy of a letter to Mrs. Powers' attorney dated September 13, 1991, and written by Dr. David J. Itkin, Mrs. Powers' treating physician in New Hampshire. In this letter, Dr. Itkin made the following comments as to Mrs. Powers' condition:
[Mrs. Powers'] illness evolved into a cellulitis of the scalp and face. The only possible etiologic factor that was determined was a recent hair tinting procedure that the patient received on August 31, 1990.
According to Mrs. Powers, she had received similar such treatments since December 1989. She did not recall as to whether any additional chemicals were used, and she did not note any significant burning sensation following that procedure. Careful physical examination did not reveal any definite areas of irritation or chemical burn of the scalp.
Based on the above, the relationship between Mrs. Powers hair tinting procedure and her subsequent development of cellulitis remains speculative, in view of the fact that the only association was a temporal one. If an obvious area of scalp irritation had been found, this would have strengthened the association. Also, if a different type of chemical, more caustic, was used for that particular tinting procedure, the association might also be strengthened.
Also attached to the motion for summary judgment as Exhibit C were pages of Mrs. Powers' deposition which established that, to the best of her knowledge, Ms. Turner applied the same hair coloring to her hair on August 31, 1990, as on prior occasions. Exhibit *924 D was a copy of a consultation report dated September 7, 1990, by Dr. Itkin, in which he recounts the results of his physical examination of Mrs. Powers; he notes her facial swelling, observing that "[s]welling extends into the scalp, and it does pit." Exhibit E was a typed document entitled "Discharge Summary" and signed by Gail Snow, M.D.; although the name of the patient was omitted from the typed report, Mrs. Powers' name has been handwritten at the top. Exhibit F appeared to be progress notes by Dr. David Hebert; on October 3, 1990, he refers to Mrs. Powers developing an abscess above the left temporal area and losing more hair. None of these medical records are certified.
On August 3, 1995, the trial court held a hearing on the summary judgment motion. The trial judge asked plaintiffs' counsel about the existence of any expert testimony as to the cause of Mrs. Powers' illness, and counsel responded that Mrs. Powers was scheduled the following week to see a physician specializing in infectious disease at the LSU Medical Center in Shreveport. Counsel stated that if the physician informed him that Mrs. Powers did not "have a case," then the plaintiffs would move to have the matter dismissed. Accordingly, the trial court instructed counsel that he had until August 28, 1995, to supplement the opposition to the motion for summary judgment with testimony and affidavits from the infectious disease specialist who was to see Mrs. Powers. The trial judge noted that if plaintiffs' counsel failed to supplement their opposition as instructed, the court would grant the summary judgment motion.
On August 31, 1995, the trial court rendered a signed judgment granting the defendants' motion for summary judgment and dismissing the suit with prejudice as to all defendants. The judgment was rendered pursuant to notification by the defendants that plaintiffs had failed to supplement their opposition with affidavits from their medical expert.
The plaintiffs appeal, contending that the trial court erred in granting summary judgment because the affidavit by Dr. LaRocco expressed his opinion. This affidavit, urge the plaintiffs, was an improper basis for summary judgment because it required the court to make an assessment of credibility and evaluate the probative value of the doctor's opinion, and it lacked an affirmative showing that he was competent to express that opinion.

LAW
Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La. 1991); Smith v. Our Lady of the Lake Hospital, Inc., 93-2512 (La.7/5/94), 639 So.2d 730. An appellate court thus asks the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. Smith, supra.
The rules governing summary judgments are found in La.C.C.P. art. 966 and 967. A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law. La.C.C.P. art. 966; Schroeder, supra.
In 1996, the Louisiana legislature amended La.C.C.P. art. 966 to provide that summary judgment procedure is favored; however, the amendment specified that the burden of proof shall remain with the mover. The amended article became effective May 1, 1996 and provides that summary judgment procedure is "designed to secure the just, speedy, and inexpensive determination of every action, ... and shall be construed to accomplish these ends." The amendment has been held to be procedural in nature and, therefore, retroactive in application. See Short v. Giffin, 96-0361 (La.App. 4th Cir. 8/21/96), 682 So.2d 249; NAB Natural Resources v. Willamette Industries, Inc., 28,555 (La.App.2d Cir. 8/21/96), 679 So.2d 477; Collinsworth v. Foster, 28,671 (La.App.2d Cir. 9/25/96), 680 So.2d 1275; Curtis v. Curtis, *925 28,698 (La.App.2d Cir. 9/25/96), 680 So.2d 1327.
The amendment also added subsection (C) to La.C.C.P. art. 966. It provides:
After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted against an adverse party who fails to make a showing sufficient to establish the existence of proof of an element essential to his claim, action, or defense and on which he will bear the burden of proof at trial.
According to the Third Circuit, the 1996 amendment legislatively overruling the jurisprudential presumption against granting summary judgment "levels the playing field" between the parties in two ways. First, the supporting documentation submitted by the parties should be scrutinized equally, and second, the overriding presumption in favor of trial on the merits is removed. Hayes v. Autin, 96-287 (La.App. 3d Cir. 12/26/96), 685 So.2d 691.
La.C.C.P. art. 967 provides that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith." (Emphasis added)
Conflict has existed among the various Louisiana courts of appeal on the use of opinion evidence in conjunction with summary judgment. Four circuits have generally refused to allow opinion evidence which was not based upon "personal knowledge" as specified in La.C.C.P. art. 967. See Hidalgo v. General Fire & Casualty Company, 254 So.2d 493 (La.App. 3d Cir.1971); McCoy v. Physicians & Surgeons Hospital, Inc., 452 So.2d 308 (La.App.2d Cir.1984), writ denied, 457 So.2d 1194 (La.1984); Brock v. Newman, 543 So.2d 84 (La.App. 1st Cir.1989), writ denied, 548 So.2d 1251 (La.1989); Robertson v. Our Lady of Lake Regional Medical Center, 574 So.2d 381 (La.App. 1st Cir.1990), writ denied, 573 So.2d 1136 (La.1991); McElreath v. Progressive Insurance Company, 595 So.2d 693 (La.App. 5th Cir.1992), writ denied, 596 So.2d 557 (La.1992); Stevens v. Bernard, 95-1010 (La.App. 3d Cir. 1/31/96), 670 So.2d 264. This rule has been particularly applied in cases where medical opinion evidence was offered by doctors who never examined the plaintiff. See Stevens, supra. In other cases, the courts simply found that statements of an expert based on his special training and knowledge did not meet the requirement of personal knowledge. Hidalgo, supra; McCoy, supra; McElreath, supra. Only the Fourth Circuit has consistently considered such expert opinion evidence on motions for summary judgment. See Obiago v. Merrell-National Laboratory, Inc., 560 So.2d 625 (La.App. 4th Cir.1990), writ denied, 565 So.2d 445 (La.1990); Buffa v. Lawrence's Bakery, Inc., 615 So.2d 418 (La.App. 4th Cir.1993); Richoux v. Tulane Medical Center, 617 So.2d 13 (La.App. 4th Cir.1993).[1] However, see and compare Bailey v. United Gas Pipe Line Company, 27,655 (La.App.2d Cir. 12/6/95), 665 So.2d 664, writ denied, 96-0058 (La. 2/28/96), 668 So.2d 372, wherein the Second Circuit favorably applied the Obiago rationale to reverse the granting of summary judgment.
Recently, a more lenient trend has emerged in the jurisprudence in several cases which are factually similar to the present one. In the medical malpractice case of Richoux v. Tulane Medical Center, supra, the defendants' motion for summary judgment was supported by the decision of the medical review panel and the deposition of an expert witness who served on that panel, as well as answers to interrogatories in which the plaintiff stated that the only experts she planned to call at trial were the medical review panel. The plaintiff failed to file any counter affidavits by another doctor prior to the trial court's ruling on the motion. The defendants' motion was granted, and the appellate court affirmed. The Third Circuit *926 adopted the Richoux approach in Venable v. Dr. X, 95-1634 (La.App. 3d Cir. 4/3/96), 671 So.2d 1249. There the defendant doctor's motion for summary judgment was supported by the opinion of the medical review panel, an affidavit of a panel member, and interrogatory answers indicating that the plaintiff did not plan to call any experts at trial. Also, the plaintiff filed no affidavits opposing the motion. The Third Circuit affirmed the granting of summary judgment in the doctor's favor, finding that there was no genuine issue of material fact. However, the court did not address the propriety of granting summary judgment on opinion testimony.
In Guillory v. Dr. X, 96-85 (La.App. 3d Cir. 8/28/96), 679 So.2d 1004, the Third Circuit again relied upon the Richoux case to affirm the granting of summary judgment. In that case, the widow of a suicide victim sued her late husband's doctor and a pharmacy which filled the deceased's prescriptions. The court acknowledged its own prior rule that opinions of medical experts who had not examined the plaintiff were not based on "personal knowledge" and should be disregarded for purposes of summary judgment. However, the court also noted with approval the trend to uphold summary judgment based upon expert opinion where opinion evidence was necessary to decide the case and where such opinion evidence was unchallenged. Finding that the plaintiff had ample opportunity to present her claims but failed to do so, the trial court held that the record did not show that any genuine issues of material fact remained. Summary judgment in favor of the doctor was affirmed. Although the court also affirmed the granting of summary judgment in favor of the pharmacy, it did so without considering the affidavits of several pharmacists. The court found that the affidavits were defective because they were based on information contained in the prescription records kept in the regular course of the pharmacy's business and those records were not submitted with the affidavits as required by La.C.C.P. art. 967. As previously noted, that article required sworn or certified copies of all papers referred to in an affidavit. As the affidavits were defective, they were disregarded when deciding whether to grant summary judgment.

DISCUSSION
In this summary judgment case, we are obliged to conduct a de novo review. Our examination of the record reveals serious technical defects under La.C.C.P. art. 967.[2] The defendants' motion for summary judgment was supported by several documents, primarily the affidavit of Dr. LaRocco. In his affidavit, he asserts that his statements are "based on his professional experience and training and upon his review of all medical records related to the treatment of Mrs. Wilma Powers for the period September 4, 1991 through 1993." However, Dr. LaRocco's "professional experience and training" are not elaborated upon in the affidavit beyond a blanket statement that he is "a medical doctor specializing in the diagnosis and treatment of infectious diseases and is qualified to make the following statements." Moreover, the complete medical records referred to in the affidavit are not attached, and the few medical reports which are attached are not certified under La.R.S. 13:3714. Such a deficiency precludes our consideration of this evidence. See Guillory v. Dr. X, supra, and Federal Savings and Loan Insurance Corporation v. Edwards, 562 So.2d 1148 (La.App. 4th Cir.1990). Additionally, Dr. Itkin's statements are found in what purports to be a letter to plaintiff's counsel, not an affidavit; such a document is not of sufficient evidentiary value to be given weight in determining whether there is a genuine issue of material fact. Without the supporting documentation, the defendants cannot be said to be entitled to summary judgment.

CONCLUSION
Accordingly, the judgment granting summary judgment is reversed, and the case is remanded to the trial court for further proceedings. *927 Costs of this appeal are assessed against the defendants.
REVERSED AND REMANDED.
CARAWAY, J., concurs in the result.
NOTES
[1] While the Fourth Circuit appears to have a different standard in this area, it should be noted that the experts in Obiago and Buffa had personal contact with and/or observation of the matter at issue.
[2] Due to these deficiencies, we are not obliged to resolve at this junction the question of whether to follow either McCoy, supra, or Obiago, supra, in the instant matter.