IzCANNELLA, Judge.
Plaintiffs, Joy and George Vedros, appeal from a district court judgment in favor of defendants, Dr. Hamid Massiha and Magnolia Surgical Facility, finding that they were not guilty of medical malpractice in the treatment rendered to plaintiffs. For the reasons which follow, we affirm.
Plaintiffs were originally referred to defendants by Joy Vedros’ uncle, Dr. Warren Leeds, upon a determination by plaintiffs for her to have a subcutaneous mastectomy as a prophylactic measure because she was a high risk cancer patient. Dr. Massiha is a plastic surgeon and Magnolia Surgical Facility is his clinic. After consultation, Dr. Massiha agreed to perform the surgery, which involved an incision and removal of the glandular and fatty tissue of the breast and insertion of polyurethane implants. This procedure took place on January 12, 1984, without apparent complications. On February 27, 1984, Joy Vedros came to defendants’ office with complications. The implants were found to be exposed and Dr. Massiha scheduled surgery for the following day to remove them. Dr. Massiha suspected that Joy Ved-ros had anlginfection, a common complication of the procedure he performed on her and he took a culture of the area to have it tested. The culture confirmed the infection, Proteus Mirabilis, and the sensitivity report provided that the most effective antibiotic treatment for that particular bacteria was Ampieillin. Dr. Massiha immediately started Joy Vedros on Ampieillin. Over the course of the next two months, it appeared that the infection had been cured. Thereafter, on May 7,1984, Dr. Massiha inserted expanders in her breasts. Through July and August the infection appeared to be gone. On August 24, 1984, the expanders were replaced with new silicone implants. Dr. Massiha followed her ease through September and there appeared to be no complications or infection.
Dr. Massiha did not see Joy Vedros again until almost a year later, in May of 1985. She then complained about the symmetry of her breasts and the size. Surgery was performed on May 29, 1985 to replace the implants with different ones. Dr. Massiha saw *1122 her several times in the next few months and there appeared to be no complications until October 15, 1985, when he noted drainage from the right breast. A culture was taken which again confirmed Proteus Mirabilis infection. She was again placed on oral doses of Ampicillin. By October 22, 1985 she appeared to be free of the infection again. However, four months later, in February of 1986, her right breast was again enlarged. Dr. Massiha was out of town, so she consulted Dr. Leeds. He consulted an infectious disease specialist, Dr. Trestman. She saw Dr. Massiha on February 17, 1986 and he drained the breast and took another culture of the area which again established the existence of the same bacteria. Dr. Massiha consulted with Dr. Trestman and she was again given oral doses of Ampicillin. The right implant was removed on February 25, 1986 and she saw Dr. Massiha for the last time at a follow up visit on February 27, 1986.
Plaintiffs brought the present action against defendants, alleging that Dr. Massiha breached the appropriate standard of care in his treatment of her and that breach caused or enhanced her injuries.
The case was tried before a twelve person jury over a four day period. The jury returned a verdict in favor of defendants. The verdict was rendered by the trial court |4and signed on July 8, 1993. Plaintiffs’ motions for new trial and judgment notwithstanding the verdict were denied. Plaintiffs appealed.
On appeal, plaintiffs assign two errors, that the jury verdict was manifestly erroneous in failing to find that Dr. Massiha breached the applicable standards of care and that the jury erred in failing to find that Dr. Massiha did not obtain the informed consent of Joy Vedros.
It is well settled that, on appellate review of a factual determination, the reviewing court may not set aside a jury’s finding of fact in the absence of manifest error or unless it is clearly wrong. Also, where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. Esco, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring, 283 So.2d 716 (La.1973). The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. Stobart v. State through DOTD, 617 So.2d 880 (La.1993). Thus, where two permissible views of the evidence exist, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Stobart, supra.
Here, we must consider whether the jury was reasonable in finding that Dr. Massiha did not breach the applicable standards of care in his treatment of Joy Vedros and that he obtained her informed consent.
Plaintiffs’ argue that the jury erred in not finding that Dr. Massiha breached the applicable standards of care because the evidence established that he did not properly or adequately communicate to Joy Vedros the nature of her recurring infection and he did not consult a specialist concerning the proper treatment of the infection.
Plaintiffs contend that the appropriate standard of care requires that a physician communicate to the patient the nature of the pertinent ailment or condition. Hondroulis v. Schuhmacher, 553 So.2d 398 (La.1988). They contend that defendant failed in this regard, in that, he did not communicate to plaintiff that she was infected with Proteus Mirabilis. They further contend that Dr. Massiha did not inform plaintiff that it was an | ¿infection at all, but led them to believe that she was having some kind of reaction to the implants. Plaintiffs also contend that Dr. Massiha breached the appropriate standard of care by not referring Joy Vedros to an expert in the field of infectious disease. Plaintiffs do not contend that Dr. Massiha caused the infection but only that he deviated below the proper standard of care in his treatment of the infection after it developed.
The jury disagreed with plaintiffs and found that defendants adhered to the applicable standards of care in the treatment of Joy Vedros. We find that the record supports the jury’s determination in this regard.
*1123 At trial, Dr. George Hoffman, a board certified plastic and reconstructive surgeon, who has been practicing medicine for approximately 30 years, testified in favor of defendants. He stated that in his practice he had seen several patients who contracted a pro-teus infection after having breast surgery and that, with one exception, he treated the infection in these cases himself. Dr. Hoffman testified that in treating the infections, he relied on the results of the patients’ cultures and sensitivities, as did Dr. Massiha, and prescribed the drug to which the bacteria was most sensitive, as per the report. Dr. Hoffman testified that the failure to consult an infectious disease specialist under these circumstances was not a deviation below the appropriate standard of care.
Dr. Massiha testified, in accord with other expert testimony, that he did not believe it was required to inform a patient of the Latin name for the bacteria infecting the patient’s body. Joy Vedros was informed that infection was a possible risk of the surgery and she fully understood that. He prescribed, antibiotics for her condition and believed that she understood that she had an infection. He stated that he felt comfortable treating her infection after taking a culture and receiving the sensitivity information indicating that the proper drug to treat the infection was Ampicillin. He testified that this was the same procedure that an infectious disease specialist would have used and that he saw no reason to subject his patient to further unnecessary tests.
Testimony was also introduced that, even after Joy Vedros had changed doctors and was under the care of Dr. Church, who did consult the infectious disease specialist, | (¡Dr. Conway, she again developed the proteus infection.
The opinion of the medical review panel that considered the question of whether defendants’ treatment of Joy Vedros deviated below the appropriate standard of care was introduced into evidence. The panel, consisting of Dr. James May, Dr. James McKeon and Dr. George Hoffman, opined that the evidence presented to them “does not support the conclusion that defendants, Dr. Hamid Massiha and Magnolia Surgical Facility, failed to meet the applicable standard of care as charged in the complaint.”
Testimony by plaintiffs’ experts was not totally to the contrary. Plaintiffs’ expert, Dr. Church, who was also her subsequent treating plastic surgeon, testified that a plastic surgeon should consult an infectious disease specialist “when you don’t feel comfortable treating the infection yourself.” While he testified that, in view of her prior history of infections, he did consult an infectious disease specialist, he did not testify that defendants deviated below the appropriate standard of care in not doing so. Also, he did not state that defendants’ treatment of her deviated below the applicable standard of care in any way.
Dr. James Conway, the infectious disease specialist consulted by Dr. Church, testified that he might have “possibly handled the antibiotics for Joy Vedros’ treatment differently.” However, he did not state that defendants deviated from the appropriate standard of care in his manner of treatment. Finally, Dr. Ronald Sanders, plaintiffs’ expert pathologist, who is not a clinician, stated that after you attempt to treat an infection with a certain antibiotic and it does not respond, then you should try a different antibiotic. In other words, he was of the view that Dr. Massiha should have tried a different antibiotic when the infection returned.
The question before this court on appeal is whether the jury determination, that Dr. Massiha did not deviate below the applicable standard of care in his treatment of Joy Vedros, was manifestly erroneous or clearly wrong. After reviewing the entire record, we conclude that the evidence supports the jury finding and that the jury was not manifestly erroneous or clearly wrong in its determination.
Plaintiffs also argue that defendants should be held liable for failing to obtain Joy Vedros’ informed consent while treating her in connection with the infection. ^Plaintiffs concede that they were fiilly informed by Dr. Massiha of the risks of the initial surgery and that one of the risks they were informed about was the risk of infection. In fact, plaintiffs were informed of the high risk of *1124 infection involved in the particular surgical procedure which they wanted him to perform. However, once the infection manifested itself, plaintiffs argue that they were not thereafter fully informed of further risks involved in the treatment of the infection, or even that she had an infection.
As stated above, under the manifest error or clearly wrong standard of review, the issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. Stobart v. State through DOTD, 617 So.2d 880 (La.1993). Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder’s, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Stobart, supra.
In the instant case there was no testimony that it was a deviation below the applicable standard of care for a physician to not inform the patient of the specific name of the bacteria infecting them. Furthermore, there was conflicting testimony on the question of whether Joy Vedros knew that she had an infection in her breast causing the problems. She had, earlier in her deposition, stated that Dr. Massiha had informed her that she had an infection, although at trial she testified that he had not told her she had an infection.
To the contrary, Dr. Massiha testified that, although he had no independent recollection of the events that occurred nine years earlier, it was definitely his practice to inform his patients that they had an infection, if they had one. Further, he pointed out that he placed her on antibiotics to treat the infection and had conversations with her, indicating that she knew that she had an infection.
The jury heard testimony on both sides as to whether or not Joy Vedros was told by Dr. Massiha that she had an infection. They drew their own inferences and conclusions in deciding in favor of defendants. This finding was reasonable in view of the evidence presented and should not be upset on appeal.
Plaintiffs rely on the cases LaCaze v. Collier, 434 So.2d 1039 (La.1983) and 8Hondroulis v. Schuhmacher, 553 So.2d 398 (La.1988) in support of their action against defendants for not fully informing Joy Ved-ros about her infection. Plaintiffs argue that the same principles applicable to medical surgeries should also be applicable to simple medical care. Assuming, plaintiffs are correct in this legal premise, the record does not support a finding that the jury was clearly wrong in concluding that plaintiffs had not met their burden of proof in this regard.
As conceded by plaintiffs, in informed consent cases, the burden is on the them to prove, (1) the existence of a material risk unknown to the patient; (2) a failure to disclose the risk on the part of the physician; (3) that disclosure of the risk would have led a reasonable person in the plaintiffs position to reject the medical procedure or choose a different course of treatment; and (4) causation and injury. Hondroulis, supra; Hidding v. Williams, 578 So.2d 1192 (La.App. 5th Cir.1991).
As stated above, there was a conflict in the testimony as to whether Joy Vedros was informed that she had an infection. Plaintiffs assert that had they been fully informed of her condition, they would have consulted a specialist sooner. However, even after consultation with a specialist, under the direction of Dr. Church, plaintiffs infection was treated with antibiotics, another implant was reinserted in plaintiffs right breast and she again developed the same infection.
Therefore, considering the record as a whole, we cannot conclude that the factfin-der’s conclusions, in returning a verdict for defendants, were not reasonable and, accordingly, we do not reverse that finding.
For the reasons stated above, we affirm the judgment of the district court in favor of defendants, dismissing plaintiffs’ case, with prejudice.

AFFIRMED.