685 So.2d 691 (1996)
Donald HAYES, Plaintiff-Appellant,
v.
Dr. David AUTIN and St. Paul Fire and Marine Insurance Company, Defendants-Appellees.
No. 96-287.
Court of Appeal of Louisiana, Third Circuit.
December 26, 1996.
Writ Denied March 14, 1997.
*692 Randall Scott lies, Lafayette, for Donald Hayes.
Nicholas Gachassin, Jr., Lafayette, for Dr. David Autin et al.
Before KNOLL, WOODARD, and DECUIR, JJ.
KNOLL, Judge.
In this medical malpractice case, Donald Hayes sued Dr. David L. Autin, alleging that Dr. Autin had failed to secure his informed consent for a vasectomy procedure. Mr. Hayes also alleged that Dr. Autin was negligent in performing the vasectomy. We are called upon to decide the correctness of the trial court's granting of a motion for summary judgment in favor of defendant, Dr. David Autin.

FACTS
Donald Hayes saw Dr. David Autin, a board certified urologist in Lafayette, for the purpose of obtaining a "no scalpel" vasectomy. A "no scalpel" vasectomy differs from a conventional vasectomy in the way the doctor accesses the vas. In a conventional vasectomy, the doctor makes either one or two small cuts in the scrotal skin and lifts out each vas in turn, cutting and blocking them so that the sperm cannot reach the semen. In a "no scalpel" vasectomy, the doctor first immobilizes the vas with a small clamp before accessing the vas through a small puncture in the scrotum. The tubes are blocked through the same method as a conventional procedure. Since the "no scalpel" technique requires only a single small puncture, there is little bleeding and no stitches are required.
On June 30, 1993, Dr. Autin examined Mr. Hayes and informed him about the no scalpel procedure. Dr. Autin extensively apprised Mr. Hayes of the risks and complications of vasectomy, including loss of testicle and future pregnancy. Mr. Hayes and his wife decided to go through with the sterilization. Prior to surgery, Mr. & Mrs. Hayes signed the following consent form:

CONSENT FOR STERILIZATION OPERATION
WHEREAS, Dr. David L. Autin has been asked to perform an operation of sterilization to the undersigned husband, such an operation being known as a vas ligation and section, and WHEREAS, Dr. David L. Autin is willing to perform said operation only upon the written consent and agreement of the undersigned husband and wife, freely and fully given, and WHEREAS, the undersigned by execution of this agreement, hereby give their consent and agreement, individually and jointly, to the performance of a vas ligation and section upon the husband with the full understanding that said operation may forever and irrevocably deprive said husband of the ability to produce children or cause pregnancy in a female partner.
The undersigned further agree that Dr. David L. Autin shall not be responsible in any way for any deleterious consequences resulting from said operation, and hereby release and discharge them from any or all claims and demands whatsoever which they, their heirs, executors, administrators or assigns have or may have against Dr. David L. Autin.
We acknowledge by our signatures affixed hereto that we are informed that the operation will be performed by Dr. David L. Autin who is both licensed and qualified to perform vasectomy.
We fully understand all details about vasectomy as a means of birth control.
The vasectomy was performed on July 19, 1993. Dr. Autin's narrative report of the operation reveals that Mr. Hayes was placed on the operating room table in the supine position, and that he was given a local anesthetic in the scrotal area. Dr. Autin began *693 with Mr. Hayes' left side. Due to extreme thickness of the scrotal skin, Dr. Autin had a difficult time palpitating Mr. Hayes' left vas. Eventually Dr. Autin was able to locate and grasp the left vas through the skin, and was able to perform a "no scalpel" vasectomy on the left side.
The procedure was significantly more difficult for the right side, however, and Dr. Autin was unable to locate the vas on Mr. Hayes' right side. Dr. Autin noted in his report:
Numerous occasions which were very frustrating ensued with trying to grab the right vas which was impossible because of the extreme thickness of the scrotal skin and the very short cord on the right side. Numerous manipulations were performed in order to grab the vas on the right side and pull the cord to the right side, but the scrotal skin was extremely thickened and noncompliant.
During the procedure, Dr. Autin told Mr. Hayes that he was unable to locate his vas on the right side. Dr. Autin explained that it was possible that Mr. Hayes did not have a vas on the right side, and that the procedure on the left side alone might be sufficient to render him sterile. Dr. Autin explained that he could not be sure that Mr. Hayes would be sterile, however, and that the procedure might have to be repeated. Mr. Hayes did not want to repeat the procedure.
At that point, Dr. Autin gave Mr. Hayes the following options: to make an incision in order to find the vas and complete the procedure, to terminate the procedure, to proceed to the hospital for completion of the procedure, or to complete the procedure at a later date. Mr. Hayes was not interested in having the procedure done at a later time, and he stated that he wanted to be sterilized then and there. He elected that Dr. Autin should make an incision so that he could locate the vas and insure sterilization. Mr. Hayes told Dr. Autin to "go ahead and do this and lets get it over with."
Dr. Autin made a small incision in the scrotal skin to look for the vas. He stated in his report that even after the incision was made, it was impossible to tell whether the vas was present or not. He stated in his report that Mr. Hayes' epididymis, the convoluted part of the vas attached to the testicle, appeared to be blind ending, but to make a definite statement was impossible. Dr. Autin therefore removed the lower pole half of the epididymis in order to render Mr. Hayes infertile.
Mr. Hayes was unhappy with the operation. He found the incision to be longer than he had wanted, and that several stitches were necessary to close the incision. He was also displeased with the size of the resulting scar. Mr. Hayes refused to return to Dr. Autin for a post operative examination, and instead presented himself to Dr. J.W. Vildibill, a urologist in Lafayette, on August 2, 1993. Dr. Vildibill found that the incision was healing nicely and there was no undue tenderness upon examination. Dr. Vildibill assured Mr. Hayes that he had normal induration for a patient following a simple vas ligation, and that he was going to be as good as new in time.
On September 8, 1993, Mr. Hayes then went to see Dr. Glenn Landry, a urologist in Metairie, and complained that his left testicle was tender. Dr. Landry's impression was one of possible testalgia, and he recommended carbenicillin, vicodin, aspirin, and sitz baths. Mr. Hayes returned to Dr. Landry on September 16, 1993, whereupon Dr. Landry noted no apparent tenderness.
A medical review panel was convened, and the panel opined that Dr. Autin did not breach the appropriate standard of care with respect to his treatment of Mr. Hayes. Mr. Hayes then filed suit against Dr. Autin and his insurer. Dr. Autin and his insurer answered, and filed a motion for summary judgment. After a hearing, the trial court granted defendant's motion for summary judgment, finding that there was no genuine issue of material fact and that the plaintiff did not show that there was a material risk that the defendant had a duty to disclose. The court further found that the plaintiff failed to show that there was any connection between the alleged failure to inform the patient of a risk and the realization of that risk.
*694 Mr. Hayes appeals, asserting that the trial court erred in granting summary judgment because a material issue of fact exists as to whether plaintiff consented to the procedure that was actually performed on him.

SUMMARY JUDGMENT
A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966. In Smith v. Our Lady of the Lake Hosp., 93-2512 (La.7/5/94); 639 So.2d 730, the Louisiana Supreme Court defined the operative provisions of La.Code Civ.P. art. 966:
A "genuine issue" is a "triable issue." Toups v. Hawkins, 518 So.2d 1077, 1079 (La.App. 5th Cir.1987) (citing Brown [v. B & G Crane Service, Inc., 172 So.2d 708 (La.App. 4th Cir.1965)] supra). More precisely, "[a]n issue is genuine if reasonable persons could disagree. If on the state of the evidence, reasonable persons could reach only one conclusion, there is no need for a trial on that issue. Summary judgment is the means for disposing of such meretricious disputes."

* * *
A fact is "material" when its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery. Penalber v. Blount, 550 So.2d 577, 583 (La.1989). "[F]acts are material if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute." South Louisiana Bank v. Williams, 591 So.2d 375, 377 (La.App. 3d Cir.1991), writs denied, 596 So.2d 211 (La. 1992).
Smith, 639 So.2d at 751.
La.Code Civ.P. art. 966, providing for summary judgment was recently amended and reenacted by Act No. 9 of the First Extraordinary Session of 1996. The amended statute provides that the summary judgment is designed to secure the just, speedy, and inexpensive determination of every action, and that the procedure is now favored.
We find that the amended article substantially changes the law of summary judgment. Under the existing jurisprudence, the summary judgment was not favored and was to be used only cautiously and sparingly. The pleadings and supporting documents of the mover were to be strictly scrutinized by the court, while the documents submitted by the party in opposition were to be treated indulgently. Any doubt was to be resolved against granting the summary judgment, and in favor of trial on the merits. Sassone v. Elder, 626 So.2d 345 (La.1993); Vermilion Corp. v. Vaughn, 397 So.2d 490 (La.1981).
The jurisprudential presumption against granting the summary judgment has been legislatively overruled by La.Code Civ.P. art. 966 as amended. In effect, the amendment "levels the playing field" between the parties in two ways: first, the supporting documentation submitted by the parties should be scrutinized equally, and second, the overriding presumption in favor of trial on the merits is removed.
Under the amended statute, the initial burden of proof remains with the mover to show that no genuine issue of material fact exists. However, under Art. 966(C), once the mover has made a prima facie showing that the motion should be granted, the burden shifts to the non-moving party to present evidence demonstrating that material factual issues remain. Once the motion for summary judgment has been properly supported by the moving party, the failure of the nonmoving party to produce evidence of a material factual dispute mandates the granting of the motion. The amendment to Art. 966 brings Louisiana's standard for summary judgment closely in line with the federal standard under Fed.Rule Civ.Proc. 56(c), which was summarized by the Louisiana Supreme Court in Sassone:
In the federal system, when the nonmoving party bears the burden of proof at trial, there is no genuine issue of material fact if the nonmoving party cannot come forward at the summary judgment stage with evidence of such sufficient quantity *695 and quality for a reasonable juror to find the party can satisfy his substantive evidentiary burden. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The court in Celotex stated:
In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no "genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.
477 U.S. at 322-23, 106 S.Ct. at 2552. The "purpose of summary judgment in the federal system is to `pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).
Sassone, 626 So.2d at 351.
We therefore adopt the federal courts' more liberal standard for summary judgment. Provided that sufficient time for discovery has been allowed, we will assess the proof submitted by the parties in order to weed out meritless litigation, and to secure the just, speedy, and inexpensive determination of every action submitted for summary judgment.

INFORMED CONSENT
Under Louisiana law, a competent person must be informed of the material risks associated with a medical procedure. A risk is "material" if it would influence the treatment decision of a reasonable person in the patient's position. Disclosure must be made only when a risk is medically known and of a magnitude that would be material in a reasonable patient's decision to undergo treatment. When an undisclosed risk would have induced a reasonable person in the patient's condition to refuse treatment, there is a causal connection between the physician's failure to inform and the patient's injury. Hondroulis v. Schuhmacher, 553 So.2d 398 (La.1988); Yahn v. Folse, 639 So.2d 261 (La. App. 2 Cir.1993), writ denied, 94-1276 (La.9/2/94); 643 So.2d 145.
We have carefully reviewed the pleadings, depositions, medical records, and affidavits presented, and we conclude that Dr. Autin's motion for summary judgment is amply supported. Mr. Hayes alleges that there are genuine issues of material fact, namely that he did not consent to the procedure performed and that he would have withheld his consent had he known that an incision was necessary. Mr. Hayes has failed to support these arguments with an evidentiary showing. To the contrary, Mr. Hayes' own deposition and affidavit show that he knew that a larger incision would require stitches and take longer to heal and he consented to the incision with this knowledge.
The material risk complained of in the instant case is that an incision was made during the sterilization procedure, and the incision and subsequent scar were larger than the patient had desired. Even in a "no scalpel" vasectomy, an incision must be made, and in a conventional vasectomy procedure a larger incision is a requisite necessity. It is a simple fact that neither procedure can be performed without making some kind of incision. The injury Mr. Hayes complains of is not a material risk of a vasectomy, it is a necessary part of the procedure.
Dr. Autin informed Mr. Hayes that he could not perform the "no scalpel" procedure, and that a larger incision would have to be made to insure sterilization. It is undisputed that Mr. Hayes consented to a larger incision. The record reflects that Mr. Hayes wanted to be sterilized there in Dr. Autin's office, that he wanted to be sure of the sterilization, and that he did not want to repeat the procedure at a later date. The record further reflects that having the procedure *696 performed in a hospital would be substantially more expensive, and that Mr. Hayes did not have hospitalization insurance. We cannot conclude that a reasonable person would have refused a conventional vasectomy had he known that a slightly larger incision was required.
Even under a subjective standard, the facts in the case sub judice clearly show that Mr. Hayes gave an informed consent to the conventional vasectomy. He and his spouse signed the consent for sterilization form, and verified that they had been informed about the procedure. The record reflects that Mr. Hayes clearly knew the difference between a conventional vasectomy and a "no scalpel" vasectomy, namely that a conventional vasectomy required a larger incision that would take longer to heal. Once Dr. Autin informed Mr. Hayes that he was unable to perform the "no scalpel" procedure, he informed Mr. Hayes of his options, including a conventional vasectomy or terminating the procedure. Mr. Hayes instructed Dr. Autin to make an incision so that the procedure could be completed. Mr. Hayes was aware of the risk, i.e., that a larger incision might require stitches and take longer to heal, and he agreed to the procedure with full knowledge of that risk.
Mr. Hayes complains that the incision made by Dr. Autin was larger than the incision that he agreed to. Mr. Hayes stated that he had a picture in his mind of what the incision should be, and that he only "agreed on the incision that was in my mind, that a normal vasectomy would be." The determination of materiality of a risk relies on an objective standard in order to shield the physician from aberrational decisions on the part of patients. Yahn v. Folse, supra. Therefore, what Mr. Hayes pictured in his mind is not relevant for a determination of materiality. We nevertheless find it significant that Mr. Hayes did not inform Dr. Autin that he had only agreed to the incision he had pictured in his mind, and that he instead told Dr. Autin to "go ahead and do this and lets get it over with."
We find that Mr. Hayes consented to the procedure with full knowledge that a larger incision would have to be made to ensure sterilization. We find that the trial court was correct in its determination that there was no material risk that defendant had a duty to disclose. We also agree that there is no causation between failure to disclose a material risk and the injuries complained of by plaintiff.
Although we recognize that Mr. Hayes has disputed several facts, the facts disputed by Mr. Hayes are not material to the outcome of the case. Accordingly, we conclude that the trial court was correct in its determination that no material issue of fact existed and that Dr. Autin was entitled to judgment as a matter of law.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to appellant, Donald Hayes.
AFFIRMED.