hLOBRANO, Judge.
Plaintiff, Rust Scaffold Rental and Erection, Inc., appeals the granting of a summary judgment in favor of defendants, Grimaldi Construction, Inc. and C.R. Pittman Construction Company, Inc., A Joint Venture, (“Grimaldi/Pittman”), and Aetna Casualty Insurance Company (“Aetna”). We reverse and remand for trial on the merits.
The facts of this case are as follows: In 1994, Grimaldi/Pittman, as general contractor, entered into a building contract with River City Joint Venture for the construction of improvements on the River City Casino Site in New Orleans. Plaintiff entered into a subcontract with Grimaldi/Pittman to provide labor and scaffolding for this job. Plaintiff also entered into a subcontract with George M. Raymond Co. (“Raymond”) to provide labor and materials for the River City Riverboat Terminal. On April 10, 1996, plaintiff filed a petition to enforce a laborers’ and materialmen’s lien and named as defendants River City, Grimaldi/Pittman, Raymond and Aetna.[1] Plaintiff alleged a balance due in the total sum of $182,804.23 of which $71,830.84 was incurred by Grimaldi/Pittman |2and the balance by Raymond. The petition was answered by Grimaldi/Pittman and Aetna on June 4,1996.
According to plaintiff, Rust Scaffold Services, Inc. is the holding company for plaintiff, Rust Scaffold Rental and Erection, Inc. (“Rust Erection”), its union subsidiary, and for Rust Scaffold Builders, Inc. (“Rust Builders”), its non-union subsidiary.[2] Subsequent to the filing of the answer by Grimal-di/Pittman and Aetna, Shannon Roberts, a representative of Rust Builders, and Ralph Grimaldi of Grimaldi/Pittman, negotiated a payment by Grimaldi/Pittman in the sum of $7,872.60. Grimaldi/Pittman argues that this amount represented a settlement of all of its accounts with plaintiff on the River City Casino Project. Plaintiff claims that this amount only settled Grimaldi/Pittman’s account with Rust Builders (Kenner office), but did not settle Grimaldi/Pittman’s account with Rust Erection.
It is undisputed that a $7,872.60 check dated September 26, 1996 from Grimal-di/Pittman was paid to the order of Rust Scaffold Rental and Erection Inc. and eon- *1038 tained the following language on the reverse side: “For full and final compromise settlement of all accounts on the River City Casino Project.”[3] This check was sent to a lockbox belonging to Rust Scaffold Western Region at The First National Bank of Chicago and was deposited by that bank.
Grimaldi/Pittman and Aetna filed a motion for summary judgment asking that plaintiffs claims against them be dismissed because there had been a valid compromise and settlement of those claims. In support of its motion, |3GrimaIdi/Pittman and Aetna relied on the affidavits of Michael Pittman, a representative of C.R. Pittman Construction Company, Inc., and August Grimaldi[4], a representative of Grimaldi Construction, Inc. In opposition, plaintiff relied on the affidavits of Shannon Roberts, the credit manager of Rust Builders’ Kenner office in 1996, and J. Wayne Barbin, the regional credit manager of Rust Erection in 1996. Attached to Roberts’ affidavit is a letter dated June 18, 1996 from her to Ralph Grimaldi about a proposed settlement of an account of Grimaldi/Pitt-man. Also attached is the aforementioned check from Grimaldi/Pittman to Rust Scaffold Rental and Erection, Inc. for $7,872.60 along with the deposit information and check stub. Attached to Barbin’s affidavit was a statement dated August 25, 1995 which was sent to Grimaldi/Pittman by plaintiff showing an amount due of $71,830.84.
The trial judge granted the motion for summary judgment, but did not give reasons. This appeal by plaintiff followed.
Code of Civil Procedure Article 966 was amended by the legislature in 1996. Subsequently, there was disagreement among the various courts of appeal as to the intent of the legislature with respect to those amendments. In response, the legislature again amended article 966 in 1997 to provide that all decisions inconsistent with the Third Circuit case of Hayes v. Autin, 96-287 (La.App. 3 Cir. 12/26/96), 685 So.2d 691, writ denied, 97-0281 (La.3/14/97), 690 So.2d 41, would be legislatively overruled. Subsequent to those 1997 amendments, our colleagues of the Second Circuit, in Berzas v. OXY, USA, Inc., 29,835 (La.App. 2 Cir. 9/24/97), 699 So.2d 1149, gave a succinct and ^comprehensive analysis of the current status of the summary judgment procedure. The court stated:
Appellate courts review summary judgments de novo under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Bullock v. Homestead Insurance Company, 29,536 (La.App.2d Cir. 6/20/97), 697 So.2d 712. An appellate court thus asks the same question as does the trial court in determining whether summary judgment is appropriate: whether there is any issue of material fact, and whether the mover is entitled to judgment as a matter of law. Potter v. First Federal Savings and Loan Association of Scotlandville, 615 So.2d 318 (La.1993); Powers v. Tucker, 29,190 (La.App.2d Cir. 2/26/97), 690 So.2d 922; Bullock v. Homestead Insurance Company, supra.
In Louisiana, the law regarding summary judgment is set forth in La. C.C.P. art. 966. Previously, the jurisprudence construing this article provided that summary judgments were not favored, were to be used only cautiously and sparingly and supporting documents of the mover were to be strictly construed by the courts while the documents submitted by the party opposing the motion were to be treated indulgently. Any doubt was to be resolved against granting the summary judgment and in favor of trial on the merits. Hayes v. Autin, 96-287 (La.App. 3d Cir. 12/26/96), 685 So.2d 691, writ denied 97-0281 (La.3/14/97), 690 So.2d 41.
In 1996, La. C.C.P. art. 966 was amended to legislatively overrule the jurisprudential presumption against summary judgment. The amendment “leveled the playing field” between the parties by al *1039 lowing the supporting documents submitted by the two parties to be scrutinized equally and removing the overriding presumption in favor of trial on the merits. Hayes v. Autin, supra; La. Acts 1996 (First Ex. Session), No. 9.
As noted in Hayes v. Autin, supra, under the 1996 amendment, the initial burden of proof remained with the mover to show that no genuine issue of material fact exists. However, once the mover made a prima facie showing that the motion should be granted, the burden of proof shifts to the nonmoving party to present evidence demonstrating that material factual issues remain. Once the motion for summary judgment has been properly supported by the moving party, the failure of the | gnonmoving party to produce evidence of a material factual dispute mandates the granting of the motion. Hayes v. Autin, supra; Dinger v. Shea, 96-448 (La.App. 3d Cir. 12/11/96), 685 So.2d 485; Tybussek v. Wong, 96-1981 (La.App. 4th Cir. 2/26/97), 690 So.2d 225.
* * * * H« *
In 1997, La. C.C.P. art. 966 was again amended by Acts 1997, No 483. The act provides that the amendment is intended to further clarify Acts 1996, No. 9, Section 1 of the First Extraordinary Session of 1996, and to legislatively overrule all cases inconsistent with Hayes v. Autin, supra.
* H* ❖ * * *
The amended versions of the article are procedural in nature and therefore subject to retroactive application. NAB Natural Resources, L.L.C. v. Willamette Industries, Inc., 28,555 (La.App.2d Cir. 8/21/96), 679 So.2d 477; Curtis v. Curtis, 28,698 (La.App.2d Cir. 9/25/96), 680 So.2d 1327; Short v. Giffin, 96-0361 (La.App. 4th Cir. 8/21/96), 682 So.2d 249, writ denied, 96-3063 (La.3/7/97), 689 So.2d 1372.
29,835 at pp. 4-8, 699 So.2d at 1151-1154.
Code of Civil Procedure Article 967 states, in part: “When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him.” In accordance with these now settled procedural rules we now address and decide the merits of this appeal.
Plaintiff contends that the trial court erred in concluding that when The First National Bank of Chicago deposited the cheek with the restrictive endorsement, it constituted an accord and satisfaction of the entire debt owed by Grimaldi/Pittman to plaintiff. Plaintiff argues that there are genuine issues of 16unresolved material fact which require a trial on the merits. Plaintiff claims that Roberts’ affidavit established that she intended to settle only the account Grimal-di/Pittman had with Rust Builders and that she did not have the authority to settle the Grimaldi/Pittman account with Rust Erection. Furthermore, plaintiff argues that The First National Bank of Chicago did not have the authority to accept a tender of compromise and settlement on behalf of Rust Erection and that in depositing this check, The First National Bank of Chicago violated established procedures and its principal’s instructions.
In Orgeron v. Security Industrial Funeral Homes, Inc., 96-2127, p. 3-4 (La.App. 4 Cir. 2/26/97), 690 So.2d 243, 245, we stated:
The doctrine of accord and satisfaction is a defense which estops the creditor from suing on the compromised debt. Anesthesia East, Inc. v. Bares, 594 So.2d 1085, 1087 (La.App. 4th Cir.1992). To establish the defense of accord and satisfaction, the jurisprudence requires proof that there was an unliquidated or disputed claim, a tender made by the debt in full settlement of the claim, and an acceptance of the tender by the creditor. See, e.g., Joseph A. Oster & Associates, Inc. v. Car Wash Center and Owl, Inc., 330 So.2d 688, 691 (La.App. 4th Cir.1976). Stated differently, there must be a contract to make full settlement of a claim for a specific consideration. Hall v. Management Recruiters of New Orleans, 332 So.2d 509, 511 (La. App. 4th Cir.1976). In cases where the applicability of the doctrine of accord and *1040 satisfaction is in doubt, it will not be applied. See, e.g., Reily Electrical Supply, Inc. v. Hollenberg, 535 So.2d 1321, 1323 (La.App. 5th Cir.1988), writ denied, 540 So.2d 331 (La.1989).
The defendant has the burden of proving the elements of the defense of accord and satisfaction. See, Anesthesia East, Inc. v. Bares, 594 So.2d 1085 (La.App. 4th Cir.1992). Grimaldi/Pittman relies on the fact that the check with the restrictive endorsement was negotiated and on August Grimal-di’s statement in his affidavit that Shannon Roberts told him that the amount of $7,872.60 would be |7acceptable as full and final settlement of all amounts owed by Gri-maldi/Pittman to Rust Erection on the River City Casino project.
Although the restrictive endorsement language on the check and its subsequent negotiation does give rise to a strong presumption that Grimaldi/Pittman’s offer to settle its account with Rust Erection was accepted, plaintiff has countered that presumption with equally strong evidence that acceptance was not intended. Plaintiffs evidence includes the affidavits of Shannon Roberts and Wayne Barbin which attest that Grimaldi/Pittman owed money to both Rust Erection (the plaintiff herein) and Rust Builders, and that the amount owed to the plaintiff was substantially more than that owed to Rust Builders. Roberts stated that she only intended to settle the account Gri-maldi/Pittman had with Rust Builders’ Ken-ner office and that this account was the only one she had the authority to settle. Roberts states that she did not even know of the existence of the Rust Erection account until October, 1996. She states that her position in 1996 was credit manager of the Rust Builders’ Kenner office.[5]
Barbin’s affidavit states that he was the regional credit manager of Rust Erection in 1996 and that, at no time, did he authorize Shannon Roberts to settle Grimaldi/Pittman’s account with Rust Erection. He also states that no one with Rust Services, Rust Erection or Rust Builders authorized a settlement of all accounts of Grimaldi/Pittman relating to the River City Casino project.
The credibility of the above evidence is bolstered by the fact that the check in question is dated September 26, 1996, over two months after Grimaldi/Pittman answered plaintiffs lawsuit, yet there is no evidence suggesting either party’s attorney was involved in the alleged compromise. In fact, it appears | gthat the negotiations were pursued solely by Ralph Grimaldi and Shannon Roberts. This observation, when considered with the opposition affidavits, convince us that there are unresolved factual issues regarding to which account the payment was to be applied. Certainly, it would be reasonable to assume that the compromise of a claim in excess of $71,000.00 for the sum of $7,872.60, after a lawsuit had been filed, would entail more documentation than simply a check with a restrictive endorsement.
Furthermore, contrary to defendants’ arguments, this case is distinguishable from those cited in defendants’ brief, i.e. Charles X. Miller, Inc. v. Oak Builders, Inc., 306 So.2d 449 (La.App. 4th Cir.1975), (the company president personally negotiated the instrument offered in full settlement); Harmon v. Simon, 624 So.2d 981 (La.App. 3rd Cir.1993), (checks tendered for a lesser amount than requested and accompanied by letters clearly expressing that fact were personally accepted and negotiated by payees); Didriksen v. Sewerage and Water Board of New Orleans, 527 So.2d 319 (La.App. 4th Cir.1988), writ denied, 532 So.2d 770 (La.1988), (nine checks containing restrictive endorsement sent by same party and negotiated over ten month period by clerk employed by creditor). Of these three eases, only the Didriksen case was decided on a motion for summary judgment; the other two involved full trials on the merits.
Accordingly, for the reasons assigned, we reverse the grant of summary judgment and remand for further proceedings.
REVERSED AND REMANDED.

. Aetna Casualty wrote the bond for Grimal-di/Pittman.

. It is important to keep in mind that Rust Erection is the plaintiff in these proceedings.

. The reverse side of the check in question is not contained in the appeal record. However, both parties state in their appeal briefs and in memo-randa in support of and in opposition to the motion for summary judgment that this language was included on the back of the check.

. A reading of the record suggests that Ralph Grimaldi and August Grimaldi are the same person although there is no confirmation of this in the record.

. The June 18th letter attached to Roberts' affidavit bears the letterhead "Rust Scaffold Builders, Inc.”, and is signed by her in her capacity as credit manager of only that entily.