734 So.2d 1 (1998)
Gladne T. Harris and David C. HARRIS, Individually and on Behalf of their minor child, Jillian Michelle Harris
v.
John LANDRY, M.D., Robert Quinilty, M.D., Terrebonne General Medical Center and Louisiana Medical Mutual Insurance Company.
No. 97 CA 0525.
Court of Appeal of Louisiana, First Circuit.
April 8, 1998.
*2 Joseph F. Bishop, Jr., S.C. Garcia, III, Metairie, LA, Attorneys for Plaintiffs-Appellants Gladne T. Harris and David C. Harris.
William A. Eroche, Houma, LA, Attorney for Defendant-Appellee Terrebonne General Medical Center.
Joseph A. Reilly, Jr., Jimmy A. Castex, Jr., Houma, LA, Attorneys for Defendant-Appellee Robert Quinilty, M.D.
BEFORE: GONZALES, PARRO, AND GUIDRY, JJ.
GUIDRY, J.
The plaintiffs, Gladne and David Harris, appeal from the trial court's grant of summary judgment in favor of defendants, Robert Quinilty, M.D., and Terrebonne General Medical Center (TGMC), in this medical malpractice action. For the reasons that follow, we affirm the trial court judgment.

FACTS
In 1992, Mrs. Harris became pregnant with her third child and sought obstetrical treatment from Dr. John Landry. Mrs. Harris' medical history indicates that her second child, due to shoulder dystocia, sustained a fractured clavicle during delivery. Further, when she was delivered, Mrs. Harris herself suffered a brachial plexus injury due to shoulder dystocia. As a result of this medical history, Mrs. Harris expressed concern to Dr. Landry that she might have a difficult delivery of the third child due to a large infant.
Two ultrasounds were performed during the pregnancy: the first, on September 10, 1992, with an ultrasound age of the fetus of 11.8 to 12.3 weeks; and the second, on March 11, 1993, with an ultrasound age of the fetus of slightly over 36 weeks. A technician employed by TGMC performed the actual ultrasound examinations. However, Dr. Quinilty, a board certified radiologist, authored the ultrasound reports. The March 11, 1993 ultrasound report estimated fetal weight at 6 pounds, 11 ounces.
On March 26, 1993, Mrs. Harris delivered a 9-pound, 13-ounce female with shoulder dystocia and a fractured right clavicle. Because of this injury, the child has permanent paralysis.

PROCEDURAL HISTORY
On November 8, 1995, plaintiffs filed suit against Dr. Landry, Dr. Quinilty, TGMC, and Louisiana Medical Mutual Insurance Company, the insurer of Drs. Landry and Quinilty. On October 2, 1996, TGMC filed a motion for summary judgment. On October *3 8, 1996, Dr. Quinilty filed a motion for summary judgment. Both motions were scheduled to be heard on October 18, 1996. However, on the date of the hearing, the judge stated that he would not hear oral arguments, but instead, would take the matter under advisement. A judgment in favor of TGMC and Dr. Quinilty (collectively, appellees), dismissing the suit with prejudice against these defendants, was rendered on November 18, 1996. The plaintiffs now appeal and assert that the trial court erred in dismissing TGMC and Dr. Quinilty from the suit.
DISCUSSION
On appeal, summary judgments are reviewed de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Smith v. Our Lady of the Lake Hospital, Inc., 93-2512, p. 26 (La.7/5/94), 639 So.2d 730, 750. A motion for summary judgment is properly granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of actions. The procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966(A)(2).
In the 1997 Regular Session, the Louisiana legislature amended the summary judgment law by amending and reenacting Sections C and E of La. C.C.P. art. 966 and by repealing Sections E and F of the article. 1997 La. Acts No. 483. In part, the purpose of these amendments was to clarify legislative changes made to La. C.C.P. art. 966 in 1996 (specifically, see 1996 La. Acts, 1st Ex. Sess., No. 9, § 1), and to set forth the burdens of proof which must be met by the respective parties when a motion for summary judgment is made. 1997 La. Acts No. 483, § 4. These burdens of proof are stated in Section C of amended La. C.C.P. art. 966, as follows:
C.(1) After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted.
(2) The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
Section 4 of Act 483 indicates that the amendments are designed to legislatively overrule all cases inconsistent with Hayes v. Autin, 96-287 (La.App. 3d Cir.12/26/96), 685 So.2d 691, writ denied, 97-0281 (La.3/14/97), 690 So.2d 41. In the Hayes decision, 685 So.2d at 694, the court set forth the following rules regarding the burdens of proof in a summary judgment setting:
Under the amended statute, the initial burden of proof remains with the mover to show that no genuine issue of material fact exists. However, under Art. 966(C), once the mover has made a prima facie showing that the motion should be granted, the burden shifts to the non-moving party to present evidence demonstrating that material factual issues remain. Once the motion for summary judgment has *4 been properly supported by the moving party, the failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion.
The Hayes court also noted that, since its amendment in 1996, La. C.C.P. art. 966 has effected a substantial change in the law of summary judgment. Under previous jurisprudence, summary judgments were not favored and were to be used only cautiously and sparingly. The pleadings and supporting documents of the mover were to be strictly scrutinized by the court, while the documents of the non-mover were to be treated indulgently. Further, any doubt was to be resolved against granting the summary judgment, and in favor of trial on the merits. Hayes v. Autin, 685 So.2d at 694. See also Jenson v. First Guaranty Bank, 96-0381, 96-0382, p.3 (La.App. 1st Cir.5/9/97), 699 So.2d 403, 404. However, under the amended version of La. C.C.P. art. 966, the jurisprudential presumption against granting summary judgments no longer exists, and effectively, the playing field between the parties is leveled in two ways: first, the supporting documents submitted by the parties should be scrutinized equally, and second, the overriding presumption in favor of trial on the merits is removed. Hayes v. Autin, 685 So.2d at 694.
Retroactive application of the new summary judgment law is permissible because the legislative changes were procedural in nature. La. C.C. art. 6; Berzas v. OXY USA, Inc., 29,835, p. 8 (La.App.2d Cir.9/24/97), 699 So.2d 1149, 1153; Blue, Williams & Buckley v. Brian Investments, Ltd., 96-1451, p. 7 (La. App. 1st Cir.6/20/97), 706 So.2d 999, 1003, 1997 WL 349023, **3. Therefore, we review the present summary judgment in accordance with the rules set forth in the current version of La. C.C.P. art. 966 and with the Hayes decision. See Berzas v. OXY USA, Inc., 699 So.2d at 1152.
J. Ray McDermott, Inc. v. Morrison, 96 2337, pp. 9-11 (La.App. 1st Cir.11/7/97), 705 So.2d 195, 202-203, writs denied, 97-3055, 97-3062 (La.2/13/98), 709 So.2d 753, 754.
LSA-C.C.P. art. 967 sets forth the type of evidence that must be used to support or oppose a motion for summary judgment. Article 967 provides, in pertinent part:
Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or by further affidavits.
LSA-C.C.P. art. 967 specifically requires that affidavits must be based on "personal knowledge." An opinion as to whether a doctor breached the standard of care is not the type of "personal knowledge" contemplated by Article 967. Brock v. Newman, 543 So.2d 84, 87 (La.App. 1st Cir.), writ denied, 548 So.2d 1251 (La. 1989).
A statement of opinion is not sufficiently certain or probative to justify a conclusion that there is no issue of fact which should be determined by a trial on the merits. Expert opinions or statements or testimony requires evaluation by the trier of fact as to probative value.
Miceli v. Armstrong World Industries, 96 1134, p. 10 (La.App. 1st Cir.3/27/97), 691 So.2d 283, 289, writs denied, 97-1110, 97-1090 (La.6/13/97), 695 So.2d 980, 985 (quoting McCoy v. Physicians & Surgeons Hospital, Inc., 452 So.2d 308, 310 (La.App. 2nd Cir.), writ denied, 457 So.2d 1194 (La. 1984)).
*5 An expert opinion amounts to more of a conclusion that, although may be admissible at trial, is inappropriate for an affidavit supporting or opposing summary judgment. Brock v. Newman, 543 So.2d at 87. While facts recorded by the expert through personal observation or examination may be admissible for purposes of summary judgment, the opinions or beliefs of said experts, though derived from personal observation or examination and based upon specialized training and experience, are not the type of "personal knowledge" contemplated by the codal article. Miceli v. Armstrong World Industries, 691 So.2d at 289.
In support of TGMC's motion for summary judgment, TGMC presents excerpts from the depositions of Dr. Maclyn E. Wade, an obstetrician, Gladne Harris, David Harris and the affidavit of Dr. Christopher R.B. Merritt, a radiologist.
Dr. Wade, plaintiffs' expert witness, testified that in his review of the medical records he did not find anything that would lead him to conclude that the hospital or its personnel rendered substandard care. The affidavit of Dr. Merritt, Chairman of the Department of Radiology for Ochsner Clinic and Ochsner Foundation Hospital, stated that he saw "no errors with respect to Terrebonne General Medical Center's imaging or measurement of the fetus in this case, and specifically the ultrasound testing conducted in this case." In her deposition, Mrs. Harris admitted that she was unaware of any doctors, physicians, or other experts who say that TGMC did anything wrong. Mr. Harris also admitted that he had never thought TGMC did anything wrong. Clearly, the testimony of Dr. Wade and the affidavit of Dr. Merritt are not facts based on personal observation or examination, but instead amount to conclusions that should not be used for purposes of summary judgment. Further, the testimony of both Mr. and Mrs. Harris contains statements of their "beliefs" and conclusions, which are not facts based on their personal knowledge. Therefore, the affidavit and depositions must be disregarded for purposes of summary judgment.
In support of his motion for summary judgment, Dr. Quinilty presented the Opinion and Reasons of the Medical Review Panel, the OB ultrasound reports of September 10, 1992 and March 11, 1993, an excerpt from Dr. Wade's deposition, and the affidavit of Dr. Quinilty.
The opinions expressed by members of the Medical Review Panel were not based on any personal knowledge they had regarding the medical treatment of Mrs. Harris, and thus, may not be considered for purposes of summary judgment. Dr. Wade expressed no opinion with respect to the conduct of Dr. Quinilty. Dr. Quinilty's affidavit contains statements of his educational background, training, and what he did in connection with the ultrasound. No opinions or conclusions are contained in Dr. Quinilty's affidavit. Thus, although Dr. Quinilty's affidavit may be considered, the Opinion and Reasons of the Medical Review Panel must be disregarded for purposes of summary judgment.
In opposition to the motions for summary judgment, plaintiffs presented an affidavit by plaintiffs' attorney, S.C. Garcia, III, summarizing the deposition of Dr. Merritt; the proceedings of the Medical Review Panel, and the Opinion and Reasons of the Medical Review Panel. As discussed above, because the statements contained in these documents are opinions, they may not be considered for purposes of summary judgment.
For the foregoing reasons, in our de novo review of the motions for summary judgment and the memoranda in opposition thereto, we may not consider any of the affidavits, depositions and testimony not based on personal knowledge submitted by TGMC, Dr. Quinilty and the plaintiffs. We may, however, consider the affidavit of Dr. Quinilty in support of his motion for summary judgment. We note, however, that a motion for summary judgment *6 may be granted with or without supporting affidavits. See LSA-C.C.P. art. 966(A)(1).
On appeal, plaintiffs argue that both appellees had a duty to inform Dr. Landry and/or plaintiffs that an ultrasound is not a reliable estimate of fetal weight. According to plaintiffs, the question of whether appellees had such an obligation is a question that must be decided by the jury. TGMC argues that the responsibility of obtaining informed consent from the plaintiffs was that of Dr. Landry. Similarly, Dr. Quinilty argues that plaintiffs have not demonstrated a duty on the part of Dr. Quinilty to inform Dr. Landry that the ultrasound was an unreliable estimate of fetal size.
LSA-R.S. 40:1299.40 (the Uniform Consent Law) defines consent in terms of the patient's written agreement to a procedure after the physician has explained to the patient the known risks associated with the procedure. A written consent establishes a rebuttable presumption that the consent is valid. Hondroulis v. Schuhmacher, 553 So.2d 398, 402 (La. 1988). The plaintiff may rebut the presumption by proving: (1) the existence of a material risk unknown to the patient; (2) a failure to disclose the risk on the part of the physician; (3) that disclosure of the risk would have led a reasonable person in the plaintiff's position to reject the medical procedure or choose a different course of treatment; and (4) causation and injury. Vedros v. Massiha, 93-988, p. 8 (La.App. 5th Cir.11/16/94), 646 So.2d 1120, 1124, writ denied, 95-0382 (La.3/30/95), 651 So.2d 841; see also Hondroulis v. Schuhmacher, 553 So.2d 398.
Under the Uniform Consent Law, the duty of disclosing risks and hazards to the patient, disclosing to the patient reasonable alternatives and the risks associated with such alternatives, answering the patient's questions regarding the procedure, risks and alternatives, and obtaining the patient's consent to the procedure, is placed on "the physician or other health care provider who will actually perform the contemplated medical or surgical procedure." LSA-R.S. 40:1299.40(E)(7)(c); see also Kelley v. Kitahama, 96-45, p. 5 (La.App. 5th Cir.5/15/96), 675 So.2d 1181, 1183, writ denied, 96-1555 (La.9/27/96), 679 So.2d 1352. TGMC had no duty, as the hospital that employed the technician who performed the ultrasound, to inform the patient of the unreliability of the ultrasound as an estimate of fetal weight for purposes of determining whether vaginal delivery was appropriate. Likewise, Dr. Quinilty had no duty, as the radiologist responsible for confirming that the ultrasound was done properly, to inform the patient of the unreliability of the ultrasound. The duty rested with Dr. Landry, the physician who actually delivered the baby.
Accordingly, there is no genuine issue as to the liability of TGMC and Dr. Quinilty for the jury to decide. Neither of the appellees had a duty to inform under LSA-R.S. 40:1299.40. Therefore, we affirm the trial court decision granting the motions for summary judgment filed by appellees. Costs of this appeal are assessed to the plaintiffs, Gladne and David Harris.
AFFIRMED.
GONZALES, J., concurs and assigns reasons.
GONZALES, J., Concurring.
I respectfully concur. In regard to the discussion of affidavits and depositions used for purposes of summary judgment, I believe a serious problem has arisen with regard to the probative value to be given to expert opinions when they appear in depositions. A distinction needs to be drawn between opinion testimony given in an affidavit and opinion testimony given in a deposition. In an affidavit, the affiant is under oath; however, his statements, either fact or opinion, are not tested by question and answer, and the affiant is not subject to cross-examination as in a deposition. In a deposition, a witness is *7 subjected to questions and answers, and the value of his testimony is filtered through the standard methods for challenging both credibility and probative value, namely by cross-examination. The rules relative to depositions are governed by the Code of Civil Procedure. Article 1443(A) says in part: "Examinations and cross examinations of witnesses may proceed as permitted at the trial under the provisions of the Louisiana Code of Evidence." As can be seen from this article, witnesses in a deposition are treated just like witnesses at trial. The Louisiana Code of Evidence governs the production of evidence by witnesses at trial. Article 602 of that Code provides:
A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the testimony of the witness himself. This Article is subject to the provisions of Article 703, relating to opinion testimony by expert witnesses.
It is obvious that the requirement of personal knowledge in La. C.E. art. 602 does not apply to La. C.E. art. 703, which provides as follows:
The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in a particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence. (Emphasis added.)
It is not and it has never been the law of evidence relative to an expert opinion that such opinion can only be given based on facts within the expert's personal knowledge. It always has been the practice to make facts known to the expert, even at trial, in order for the expert to state his position. Some experts may also have personal knowledge of the facts they perceive. Even hypothetical questions are allowed to expert witnesses. Judge Lottinger, in Miceli v. Armstrong World Industries, 96-1134 (La.App. 1st Cir.3/27/97), 691 So.2d 283, writs denied, 97-1100, 97-1090 (La.6/13/97), 695 So.2d 980, 985, gives a complete analysis of the difference between the circuits on the issue of personal knowledge. The thing Judge Lottinger does not do, nor do any of these cases do, is make a distinction between the requirement of personal knowledge in affidavits, as opposed to a requirement of personal knowledge in depositions. There is no question that the Code of Civil Procedure itself requires that affidavits given, pursuant to articles 966 and 967, in furtherance of a motion for summary judgment, must be made on personal knowledge. Nowhere in either of those articles is there a reference to the fact that expert opinion given during the course of a deposition must be given upon personal knowledge. The statement of Judge Lottinger's panel, found in Miceli, 691 So.2d at 287, which says:
A statement of opinion is not sufficiently certain or probative to justify a conclusion that there is no issue of fact which should be determined by a trial on the merits. Expert opinions or statements or testimony requires evaluation by the trier of fact as to probative value.
is simply a rehashing of the conclusion by then Judge Pike Hall in McCoy v. Physicians & Surgeons Hospital, Inc., 452 So.2d 308 (La.App. 2nd Cir.), writ denied, 457 So.2d 1194 (La.1984). This often cited quote by Judge Hall concludes that:
A statement of opinion is not sufficiently certain or probative to justify a conclusion that there is no issue of fact which should be determined by a trial on the merits. Expert opinion statements or testimony requires evaluation by the trier of fact as to probative value. A motion for summary judgment is not the proper vehicle for the trier of fact to evaluate evidence and determine the facts which are disputed.
*8 Both the McCoy case and the Miceli case were written at a time prior to Acts 1997, No. 483. It is clear that that Act determines that the Hayes v. Autin, 96-287 (La.App. 3rd Cir.12/26/96), 685 So.2d 691, writ denied, 97-0281 (La.3/14/97), 690 So.2d 41, interpretation of the summary judgment article is the correct one, and all cases in conflict with Hayes are overruled. I submit that, to the extent that McCoy and Miceli are in conflict with Hayes, they are overruled.
However, where there are conflicting opinions, a fact issue may be in dispute. But where there is only one set of opinions and the opponent does not come forward with a rebutting opinion, then Hayes requires the court to grant a summary judgment to the defendant-movant, where the plaintiff has the burden of proof.
The problem with McCoy and Miceli and the question of opinion testimony is not one that is founded on the issue of personal knowledge of facts by the expert. There is obviously a distrust of expert opinion testimony, as voiced by Judge Hall in his McCoy case. That same problem of mistrust of expert opinion testimony has been addressed by the United States Supreme Court in Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The Louisiana Supreme Court has followed the reasoning of the U.S. Supreme Court in Daubert in the case of State v. Foret, 628 So.2d 1116 (La.1993). If a trial court believes that expert testimony is of such dubious value, that its probative weight cannot be determined absent an in-court observation of the expert witness, then the court should utilize its gate-keeping role under Daubert-Foret and exclude the testimony. Trial lawyers need to be made aware that the possibility of exclusion of expert testimony looms down the road and thus should make their Daubert-Foret challenges during the course of the deposition. No expert testimony under Daubert-Foret should be admitted, either in a motion for summary judgment or at trial, if it is not "relevant and reliable." The determination of what is reliable evidence is set out in the test in Daubert-Foret.
If we do not make the distinction between affidavits and depositions, then in no case where an expert opinion is an essential element of either the plaintiff's case or the defense's case will a summary judgment be possible. There are cases on the plaintiff's side where the medical review panel is of the opinion that substandard conduct has occurred and that the substandard conduct was a cause of the plaintiff's injury. There are cases where doctors are willing to give testimony in depositions to the effect that the standard of care has been breached and that breach caused plaintiff's injury. Summary judgment should be available to a plaintiff in such a case, at least as to liability. I do not see how we can take the position, after Acts 1997, No. 483, favoring the granting of summary judgment, that both sides in a malpractice case are precluded from using the device of summary judgments based on an expert's deposition. It does not matter whether it is the plaintiff's expert's deposition or the defendant's expert's deposition. Expert testimony should be filtered through the Daubert-Foret process and not the loose language of McCoy and Miceli. McCoy and Miceli give no basis for excluding opinion testimony, except the fact that the courts then had a clear, well defined and jurisprudentially established aversion and dislike for summary judgments. The admissibility of testimony is a matter of evidence and should be judged by the standards in Louisiana Code of Evidence articles 701, 702 and 703, and the cases interpreting the same. In determining whether the evidence is relevant and reliable, a court should consider (1) whether or not the theory or the technique has been tested; (2) whether it has been subjected to peer review; and (3) the known or potential error rate. It should be noted that, although the general acceptance rule is not a prerequisite, the fact that a theory or technique is widely accepted is an important factor in determining *9 admissibility. See Handbook on Louisiana Evidence Law 1998, La. C.E. art. 702, 1998 Author's Notes (1).
A recent amendment to La. C.C.P. art. 1450(A)(5) gives preference to the use of cold depositions at trial. An objecting party can force live testimony by paying in advance "... the fee, reasonable expenses, and actual costs of such expert witness..." if he so desires. As we know, the practice is that many cases are tried even before juries where depositions are only read to the jury. The amendment is clearly in conflict with Judge Hall's statement that expert opinion requires evaluation by the trier of fact.
In sum, I do not believe the requirement of "personal knowledge" for affidavits should be used to preclude the use of expert testimony by deposition for summary judgment. If a deposition can be read to a jury and be given full probative value without a showing of "personal knowledge," then why cannot a judge read this same deposition for summary judgment?