II GAIDRY, J.,
dissents in part and concurs in part.
I dissent in part. My de novo review of the judgment appealed convinces me that the workers’ compensation judge plainly erred in his interpretation of the evidence, particularly the expert testimony of Dr. Connolly, and that the judgment should be *755 reversed insofar as it dismisses Mr. Albert’s claim.
The evidence plainly demonstrates that not only is there is genuine issue of material fact as to a causal connection between Mr. Albert’s work-related injury and the recurrent disc herniation, but that the evidence predominates in favor of such a causal connection. Dr. Connolly testified that Mr. Albert had “a 10% chance of having a recurrence” of disc herniation by virtue of his original injury. It is undisputed that Dr. Connolly in fact diagnosed a “recurrent herniation” at the same level as the original herniation. Thus, the evidence simply shows that Mr. Albert fell within the unfortunate 10% of patients suffering a recurrence. The workers’ compensation judge’s reasons for judgment strongly imply that he equated the 10% chance of recurrence, which did in fact occur, to a “10% possibility” of causal connection between the recommended surgery and the 12original accident. Such is a misinterpretation of the testimony. While Dr. Connolly did testify that the accident was not “directly a cause” of the recurrent herniation and the recommended surgery, he did confirm its “relationship” to them by virtue of the original injury and the increased chance for subsequent herniation at the operated site. Our law does not require a “direct” connection to an on-the-job accident for a symptomatic recurrence of an original job injury to be compensa-ble. The factual scenario of Fontenot v. Trans Gulf, Inc., 95-0342 (La.App. 1st Cir.11/9/95), 664 So.2d 1238, relied upon by the workers’ compensation judge, cannot fairly be compared to the different and more common situation presented here. No separate, intervening cause of Mr. Albert’s continuing disability was proven. Summary judgment in favor of the employer and insurer on this issue was improper.
As to Mr. Albert’s other assignments of error, relating to res judicata and method of calculation of the supplemental earnings benefits, I respectfully concur.
I «ATTACHMENT

WRITTEN REASONS FOR JUDGMENT

STATEMENT OF THE CLAIM

The claimant alleged he is entitled to surgery recommended by Dr. Edward Connolly, neurosurgeon. The defendant, Roadway Express, Inc., filed a Motion for Summary Judgment against the claimant, Lonnie Albert, alleging there are no genuine issues of material fact as a matter of law.

FINDINGS OF FACT

1. On May 2, 1997, the claimant sustained an accident while working for defendant. As a result of the accident the claimant began receiving workers’ compensation benefits at the maximum rate of $341.00 weekly-
2. The claimant began treatment with Dr. Connolly on June 25, 1997 and underwent surgery on March 27, 1998. Dr. Connolly testified in his deposition that the surgery was performed without any complications. The claimant was discharged and sent home the day after surgery. Dr. Connolly also testified in his deposition that when he next examined the claimant on May 4, 1998, the claimant was objectively better than when he first examined him on May 2,1997.
*756 8. The claimant returned to Dr. Connolly on June 15, 1998. During this examination, the claimant advised that he had some pain in his right calf if he stood for too long. Dr. Connolly advised the claimant was at maximum medical improvement, had fully recovered from the surgery and Dr. Connolly imposed work restrictions of lifting not more than forty pounds. On October 12, 1998, the claimant went to Dr. Connolly for his last examination. The claimant complained of recurrent pain in his right calf if he tried to walk a long distance. However, the claimant advised that he was able to cut grass.
4. The defendant initiated vocational rehabilitation and several jobs were identified for the claimant and were approved by Dr. Connolly on December 23, 1998. At the time of his deposition, Dr. Connolly confirmed that the jobs identified were suitable for the claimant as he approved several jobs identified through the labor market surveys. However, the defendant continued to pay the claimant the maximum compensation rate of $341.00 weekly through September 4, 2002. Thereafter, benefits were reduced to supplemental earnings benefits effective September 5, 2002 |4to the present. Additionally, as a result of the overpayment of benefits between December 23, 1998, through September 4, 2002, supplemental earnings benefits is being paid at a reduced rate until the credit is exhausted.
5. On July 22,1999, the claimant treated with Dr. Connolly at which time he complained of occasional back pain if he overworked in his yard. Between July 22, 1999 and April 10, 2002, the claimant did not treat nor did he have any examinations scheduled with Dr. Connolly. Dr. Connolly testified in his deposition that, if there were any complications relative to the surgery or if there were residual problems, Dr. Connolly would have anticipated treatment for the back condition in this period of time.
6. On April 10, 2002, the claimant returned to Dr. Connolly who opined that there was a change, his history had changed, and now he was having trouble standing or walking and having developed low back and right leg pain. Dr. Connolly recommended surgery on May 9, 2002, as a result of a recurrent herniation. Regarding work, Dr. Connolly testified in his deposition that “not related for his problem, at this time, I thought that he shouldn’t be doing work because he had a herniated disc and had to be operated on. But he had other medical problems.”
7. Dr. Connolly testified in his deposition that the claimant recurrent herniation could have been due to getting out of bed, doing yard work, and even driving of which the claimant admitted driving to Texas and cutting his grass on several occasions. Dr. Connolly also testified that he did not know the actual cause of the second herniation. Regarding causation, Dr. Connolly testified further in his deposition that: “I don’t think it’s directly a cause but it is a relationship. Because he had a previous disc herniation, he has a 10% chance of having a recurrence. If you have one disc herniation, you have a higher incident of recurrence than a person who has never had a disc herniation.” Further testimony elicited confirmation of Dr. Connolly that the only way his recommendation for surgery is related to the claimant’s work accident of May 2, 1997 is only the 10% possibility that the claimant will sustain a recurrent herniation.

*757
CONCLUSIONS OF LAW

La C.C.P. Art. 966 has been amended to provide for the just, speedy and inexpensive determination of every action. Instead of the former presumption in favor of a trial on the merits, there now exists a preference in favor of the summary judgment procedure. Hayes v. Autin, 685 So.2d 691 (La.App. 3rd Cir.1996) In achieving these goals, the statute provides that the moving party need only point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim. Once a mover shows that the motion should be granted, the burden shifts to the non-moving party who must present evidence that manifests remaining issues of material fact. If the non-moving party fails to provide said evidence, summary judgment will be granted. Johns v. Cloud, 696 So.2d 12, 13 (La.App. 3rd Cir.1997)
Pursuant to LSA-R.S. 23:1221(3), supplemental earnings benefits is equal to 66% % of the difference between the average monthly wages at the time of the injury and the average monthly wages the employee is able to earn is any month thereafter. In this case, it is undisputed that the claimant’s own treating physician, Dr. Connolly, approved several of the jobs identified by the vocational consultant. However, despite Dr. Connolly’s approval of their position on December 23, R1998, the claimant continued to be paid temporary total disability benefits at the maximum compensation rate.
Pursuant to LSA-R.S. 23:1206, “any voluntary payment or unearned waged paid by the employer’s insurer either in money or otherwise to the employee or dependent, and accepted by the employee, which were not due and payable when made, may be deducted from the payments to be made as compensation.” Moreover, where an overpayment of benefits is erroneously made by the employer/insurer, the employer/insurer is entitled to recoup the amount of overpayment even where the erroneous overpayment is discovered years later. Crews v. Alexas Corp., 731 So.2d 338 (La.App. 5th Cir.1999)
The claimant bears the burden of proving that his employment somehow caused or contributed to his disability. Fontenot v. Trans. Gulf, Inc., 664 So.2d 1238, 1244 (La.App. 1st Cir.1995) Moreover, the First Circuit Court of Appeal recognizes that, a subsequent off the job injury is compensa-ble: “Where is it foreseeable and came about as a result of the work injury having predisposed the worker to future injury. However, if an accident caused a disability from which a worker would have recovered except for further disability produced by a separate, intervening cause, there is no liability for ■ compensation beyond the disability produced by the job-related accident.
In Fontenot, the claimant injured his back, right knee, side and sustained a hernia while working for the defendant. Subsequent to the claimant’s work injury, he developed emphysema for which he also claimed entitlement to workers’ compensation benefits. The First Circuit held that the defendants were not required to pay for any disability relating to the increased disability caused by the emphysema. In so ruling, the court recognized that there was no evidence to establish that the emphysema was related to or caused by his work accident. In this regard, the claimant’s treating physician for the claimant’s emphysema provided no opinion as to the cause of the claimant’s emphysema. Fur *758 ther, the defendant’s choice of orthopedic surgeons, Dr. Randall Lea, opined that he could not relate the emphysema to the claimant’s work injury. As a result of the claimant’s failure to produce any evidence to support entitlement to benefits for the subsequent disability the First Circuit denied any benefits resulting from the subsequent disability.
Similarly, there is insufficient evidence that directly links the claimant’s alleged current disability which necessitates surgery to his original work accident which is required in order to obligate the defendants to pay for the recommended surgery and any accompanying disability. Dr. Connolly testified that the claimant’s original surgery was performed without any complications and that the claimant fully recovered from the surgery back in 1998. This is evident from the fact that the claimant had only one visit in 1999 with Dr. Connolly and had no visits, nor was any medication prescribed by Dr. Connolly, between 1999 and April, 2002.
The lack of consistent medical treatment for almost a three year period further enforces the tenuous relationship of the claimant’s current condition to his work accident. Dr. Connolly testified that, if the claimant had any complications relative to the surgery or some other problems or residuals between 1999 and 2002, he would have anticipated a return visit by the claimant for medical treatment. However, there was no such visit. Requiring a defendant to pay for a surgery when there has been a lack of treatment for almost three years could lead to an absurd application | fipf an employer’s liability whereby the employer could be obliged to pay for a surgery ten years after the original surgery even when the employee has not treated during the period of time. The lack of treatment during an extended period of time supports defendant’s position that the current surgical recommendation along with any accompanying disability is not related to his work accident.
Where it is equally plausible that the claimant’s current condition could be the result of varying activities which he himself admits doing, the claimant has not established, more probably than not, that the surgery recommendation along with his accompanying disability is caused by his work accident. Where the evidence is evenly balance, the evidence merely shows some possibility that a work accident produced the disability, or where the evidence leaves the question of causation open to speculation, the claimant fails to carry his burden of proving his case by a preponderance So.2d evidence. Blanson v. GM Inland Fisher Guide, 764 So.2d 307 (La.App. 2nd Cir.2000) The only evidence connecting the surgery recommendation and disability to the claimant’s work accident in 1997 is Dr. Connolly’s opinion that, as a result of a prior herniation from a work accident, the claimant has a 10% chance of sustaining a recurrent herniation. This evidence is insufficient to carry the claimant’s burden. Dr. Connolly’s surgical recommendation along with the claimant’s current disability is caused by his original 1997 work accident especially in light of other activities which could have caused his herniation.
Therefore, this Court finds that the defendant’s Motion for Summary Judgment is hereby granted.
Additionally, this Court finds the workers’ compensation claim of Lonnie Albert is hereby dismissed with prejudice at his costs.